UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
JOSE CASTRO, on behalf of himself and all others              :
similarly situated,                                           :
                                                              :     No. 20 Civ.  2004 (JS)(ARL)
                                                              :
                                Plaintiff,                    :
                    v.                                        :
                                                              :
TCA LOGISTICS CORP. and THOMAS ELETTO,                        :
                                                              :
                                Defendants.                   :
                                                              :
------------------------------------------------------------- X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS OR, IN THE ALTERNATIVE, COMPEL ARBITRATION

**KESSLER MATURA P.C.**
Troy L. Kessler
Garrett Kaske
534 Broadhollow Road, Suite 275
Melville, New York 11747
(631) 499-9100

**LICHTEN & LISS-RIORDAN, P.C.**
Harold Lichten (*Pro hac vice*)
Zach Rubin (*Pro hac vice*)
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

*Attorneys for Plaintiff and the Putative Class Action*

## TABLE OF CONTENTS

Preliminary Statement..................................................................................................1

Factual Background ....................................................................................................2

Argument ....................................................................................................................2

    I.   Because Plaintiff's' Claims Are Exempt from the FAA, There Is No Basis Under Federal Law to Compel Him to Arbitration...................................................................2

        A.  Plaintiff is a "Transportation Worker."..................................................4

        B.  *Bissonnette* is inapposite. ....................................................................5

    II.  New York Law is an Inadequate Vehicle to Compel this Matter to Arbitration. ...............6

        A.  The Agreement Precludes Mandatory Arbitration Where the FAA Prohibits It ..........7

            1.  The Agreement Precludes Mandatory Arbitration by Its' Own Terms. ............7

            2.  Defendants' Authority is Inapposite ................................................8

        B.  Mandatory Arbitration of NYLL Claims is Precluded by New York Public Policy.....8

            1.  *Werthiem* and *Aimcee* are good law..................................................9

            2.  The NYLL enforces public policy concerns that are paramount in New York .9

                a.  Enforcing wage rights is a vital interest to the State of New York......10

                b.  The public policy interests underlying NYLL's wage protections are on all fours with discrimination and antitrust law ...............................11

                 c.  The public nature of NYLL lawsuits is essential to the ecosystem in which our state's wage rules are created and monitored ....................13

                 d.  Authority to the contrary is sparse and distinguishable ......................14

                 e.  This case represents a particular matter of public concern – the proper classification of truckers ...................................................................16

        C.  The Class Arbitration Waiver in the Agreement Renders the Entire Arbitration Agreement Unenforceable ..........................................................................17

            1.  Class Waivers Are Precluded by New York State Law..................................18

a. *Epic* does not control ........................................................18

b. The Court of Appeals did not undermine *Gold's* persuasiveness........20

2. Declining to enforce a class action waiver not subject to the FAA is consistent with the holdings of other state courts ............................................................22

3. The class action waiver clause is not severable ................................24

Conclusion ............................................................................................25

# TABLE OF AUTHORITIES

PAGE(S)

**FEDERAL COURT CASES**

*Am. Exp. Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ........................................................................ 7

*Appreciation Partners, I, L.P. v. Page*,
  181 F. Supp. 2d 379 (S.D.N.Y. 2002) .......................................... 24

*Archie v. Grand Cent. P'ship, Inc.*,
  997 F. Supp. 504 (S.D.N.Y. 1998) ............................................... 10

*Bacashihua v. U.S. Postal Serv.*,
  859 F.2d 402 (6th Cir. 1988) ......................................................... 5

*Bissonette v. Lepage Bakeries Park St., LLC*,
  2020 WL 2494763 (D. Conn. May 14, 2020) ........................... 5, 6, 7

*Browning-Ferris Indus. of Cal., Inc. v. Nat'l Lab. Rels. Bd.*,
  911 F.3d 1195 (D.C. Cir. 2018) ................................................... 18

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006) ..................................................................... 25

*Burgos v. Ne. Logistics, Inc.*,
  2017 WL 10187756 (E.D.N.Y. Mar. 30, 2017) ............................. 8

*Carr v. Transam Trucking, Inc.*,
  2008 WL 1776435 (N.D. Tex. Apr. 14, 2008) ............................... 4

*Catholic High Sch. Ass'n of Archdiocese of New York v. Culvert*,
  753 F.2d 1161 (2d Cir. 1985) ....................................................... 19

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001) ................................................................... 2, 3

*CMH Homes, Inc. v. Sexton*,
  441 F. Supp. 3d 1202 (D.N.M. 2020) .......................................... 23

*Comm. of Interns & Residents v. New York State Lab. Rels. Bd.*,
  420 F. Supp. 826 (S.D.N.Y. 1976) ............................................... 18

*Diaz v. Michigan Logistics Inc.*,
  167 F. Supp. 3d 375 (E.D.N.Y. 2016) ........................................ 6, 8

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) .................................................................................Passim

*Harden v. Roadway Package Sys., Inc.*,
  249 F.3d 1137 (9th Cir. 2001)..................................................................... 3, 4

*Hunt Const. Grp., Inc. v. Brennan Beer Gorman/Architects, P.C.*,
  607 F.3d 10 (2d Cir. 2010) ............................................................................ 21

*In re Ngan Gung Rest., Inc.*,
  183 B.R. 689 (Bankr. S.D.N.Y. 1995) ......................................................... 11

*In re Okura & Co. (Am.), Inc.*,
  249 B.R. 596 (Bankr. S.D.N.Y. 2000) ......................................................... 21

*Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*,
  702 F.3d 954 (7th Cir. 2012)........................................................................... 4

*Kloppel v. HomeDeliveryLink, Inc.*,
  2018 WL 1089682 (W.D.N.Y. Feb. 28, 2018)............................................. 12

*Kloppel v. HomeDeliveryLink, Inc.*,
  2019 WL 6111523 (W.D.N.Y. Nov. 18, 2019)............................................. 13

*Kloppel v. HomeDeliveryLink, Inc.*,
  2020 WL 2897014 (W.D.N.Y. June 3, 2020) ............................................... 13

*Legal Servs. Corp. v. Velazquez*,
  531 U.S. 533 (2001) ...................................................................................... 21

*Lenz v. Yellow Transp., Inc.*,
  431 F.3d 348 (8th Cir. 2005)........................................................................... 4

*Lewis v Epic Sys. Corp.*,
  823 F3d 1147 (7th Cir 2016)......................................................................... 18

*Martins v. Flowers Foods, Inc.*,
  2020 WL 5223772 (M.D. Fla. Mar. 12, 2020) ............................................... 6

*Mitropoulos v. 401 Sunrise Corp.*,
  2019 WL 2452348 (E.D.N.Y. June 12, 2019)............................................... 11

*New Prime Inc. v. Oliveira*,
  139 S. Ct. 532 (2019) ................................................................................. 1, 3

*New York State Vegetable Growers Ass'n, Inc. v. Cuomo*,
2020 WL 4218009 (W.D.N.Y. July 23, 2020) ........................................................... 19

*Padilla v. Manlapaz*,
643 F. Supp. 2d 302 (E.D.N.Y. 2009) ....................................................................... 11

*Padovano v. FedEx Ground Package Sys., Inc.*,
2016 WL 7056574 (W.D.N.Y. Dec. 5, 2016) ............................................................ 13

*Palcko v. Airborne Express, Inc.*,
372 F.3d 588 (3d Cir. 2004) ....................................................................................... 5

*Peterson v. Beale*,
1995 WL 479425 (S.D.N.Y. Aug. 11, 1995) .............................................................. 7

*Ramos v. SimplexGrinnell LP*,
796 F. Supp. 2d 346 (E.D.N.Y. 2011) ...................................................................... 20

*Rittmann v. Amazon.com, Inc.*,
__ F.3d __, 2020 WL 4814142 (9th Cir. Aug. 19, 2020) ...................................... 3, 5

*Scholtisek v. Eldre Corp.*,
697 F. Supp. 2d 445 (W.D.N.Y. 2010) ..................................................................... 10

*Seven-Up/RC Bottling Co. of S. Cal. v. Amalgamated Indus. Workers Union*,
183 F. App'x 643 (9th Cir. 2006) ............................................................................... 4

*Siller v. L & F Distribs., Ltd.*,
109 F.3d 765, 1997 WL 114907 (5th Cir. 1997) ........................................................ 3

*Simel v. JP Morgan Chase*,
2007 WL 809689 (S.D.N.Y. Mar. 19, 2007) ............................................................ 10

*Singh v. Uber Techs. Inc.*,
939 F.3d 210 (3d Cir. 2019) ....................................................................................... 5

*Smith, v. Allstate Power Vac, Inc*,
2020 WL 5086584 (E.D.N.Y. Aug. 26, 2020) ........................................................ 4, 6

*U.S. ex rel. Mikes v. Straus*,
897 F. Supp. 805 (S.D.N.Y. 1995) ........................................................................... 14

*Waithaka v. Amazon.com, Inc.*,
966 F.3d 10 (1st Cir. 2020) ................................................................................ 3, 5, 9

*Waithaka v. Amazon.com, Inc.*,
    404 F. Supp. 3d 335 (D. Mass. 2019) ........................................................... 4, 22

*Ward v. Express Messenger Sys. Inc.*,
    413 F. Supp. 3d 1079 (D. Colo. 2019) .............................................................. 5

*Webster v. Fall*,
    266 U.S. 507 (1925) ........................................................................................ 21

*Zambrano v. Strategic Delivery Sols., LLC*,
    2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016) ........................................... 14, 15


NEW YORK STATE COURT CASES

*Aimcee Wholesale Corp. v. Tomar Prods., Inc.*,
    21 N.Y.2d 621 (1968) ........................................................... 8, 11, 12, 14

*Am. Centennial Ins. Co. v. Williams*,
    233 A.D.2d 320 (2d Dep't 1996) ..................................................................... 7

*Andryeyeva v. New York Health Care, Inc.*,
    33 N.Y.3d 152 (2019) ..................................................................................... 14

*Angello v. Labor Ready, Inc.*,
    7 N.Y.3d 579 (2006) ....................................................................................... 10

*Ass'n of Plumbing & Heating Contractors of Greater New York v. Merten*,
    173 Misc. 448 (N.Y. Mun. Ct. 1940) .............................................................. 19

*Corcoran v. John F. Trommer, Inc.*,
    203 Misc. 37 (Sup. Ct. 1952) .......................................................................... 19

*In re City of Johnstown*,
    99 N.Y.2d 273 (2002) ................................................................................... 6, 7

*Denson v. Donald J. Trump for President, Inc.*,
    180 A.D.3d 446 (1st Dep't 2020) ..................................................................... 9

*Drake v. The Port Auth. of New York & New Jersey*, No.,
    2015 WL 9805295 (Sup. Ct. Dec. 29, 2015) .................................................. 13

*Enlarged City Sch. Dist. of Middletown New York v. Civil Serv. Emps. Ass'n, Inc.*,
    148 A.D.3d 1146 (2d Dep't 2017) .................................................................... 8

*F & K Supply Inc. v. Willowbrook Dev. Co.*,
    288 A.D.2d 713 (3d Dep't 2001) .................................................................... 24

*Fletcher v. Kidder, Peabody & Co.*,
  81 N.Y.2d 623 (1993) ......................................................................................... 8, 9

*Garcia v. Gov't Emps. Ins. Co.*,
  151 A.D.3d 1020 (2d Dep't 2017) ........................................................................ 24

*Garcia v. Pasquareto*,
  11 Misc. 3d 1 (App. Term 2004).......................................................................... 10

*Ginett v. Comput. Task Grp., Inc.*,
  962 F.2d 1085 (2d Cir. 1992) .............................................................................. 24

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
  6 N.Y.3d 371 (2006) ............................................................................................. 7

*Gold, v. New York Life Ins. Co.*,
  32 N.Y.3d (2018) ......................................................................................... 17, 21

*Gold v. New York Life Ins. Co.*,
  153 A.D.3d 216 (1st Dep't 2017)........................................................ 17, 18, 21, 22

*Hernandez v. State*,
  173 A.D.3d 105 (3d Dep't 2019) ................................................................... 17, 20

*Hobart v. Mendelson*,
  2020 N.Y. Slip Op. 50161(U) (App. Term. Jan. 30, 2020)................................... 10

*Kenan v. Levine & Blit, PLLC*,
  67 Misc. 3d 1240(A), 2020 N.Y. Slip Op. 50794(U) (Sup. Ct. June 29, 2020) ......... 10

*Larrison v. Scarola Reavis & Parent LLP*,
  11 Misc. 3d 572 (Sup. Ct. 2005) ........................................................................... 8

In *re Meisels*,
  10 Misc. 3d 659 (Sup. Ct. 2005) ........................................................................... 9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Benjamin*,
  1 A.D.3d 39 (1st Dep't 2003)................................................................................ 8

*Molina v. Two Bros. Scrap Metal, Inc.*,
  2018 N.Y. Slip Op. 50854(U) (Sup. Ct. May 14, 2018) ........................................ 10

*Molina v. Two Bros. Scrap Metal, Inc.*,
  2018 N.Y. Slip Op. 32537(U) (Sup. Ct. Sep. 24, 2018)........................................ 10

*Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
26 N.Y.3d 659 (2016) ............................................................................................... 7

*New York State Lab. Rels. Bd. v. Interborough News Co.*,
170 Misc. 347 (Sup. Ct. Spec. Term 1939) ............................................................ 17

*NY GO Express, Inc. v. New York State Ins. Fund*,
60 Misc. 3d 536 (Sup. Ct. 2018) ....................................................................... 13, 16

*People ex rel. Spitzer v. 14 W. Garment Factory Corp.*,
182 Misc. 2d 146, (Sup. Ct. 1999) ......................................................................... 11

*People v. DiSalvo*,
130 A.D.3d 841 (2d Dep't 2015) ............................................................................ 11

*People v. Levine*,
38 Misc. 3d 136(A), 2013 N.Y. Slip Op. 50146(U) (App. Term 2013) .................. 11

*Pineda v. Kel-Tech Const., Inc.*,
15 Misc. 3d 176 (Sup. Ct. 2007) ........................................................................... 10

*Robinson v Big City Yonkers, Inc.*,
2016 WL 7032150 (Sup. Ct. Nov. 29, 2016) ......................................................... 10

*Rudman v. Cowles Commc'ns, Inc.*,
30 N.Y.2d 1 (1972) ................................................................................................. 24

*Settlement Home Care, Inc. v. Indust. Bd. of Appeals of Dep't of*,
151 A.D.2d 580 (2d Dep't 1989) ............................................................................ 10

*Thomas v. Meyers Assocs., L.P.*,
39 Misc. 3d 1217(A), 2013 WL 1777483 (Sup. Ct. Apr. 18, 2013) ....................... 12

*Truelove v. Ne. Capital & Advisory, Inc.*,
95 N.Y.2d 220 (2000) ............................................................................................. 11

*Wertheim & Co. v. Halpert*,
48 N.Y.2d 681 (1979) ............................................................................................... 8

*Wertheim & Co. v. Halpert*,
65 A.D.2d 724 (1st Dep't 1978) ............................................................................... 9

## OUT-OF-STATE COURT CASES

*Fiser v. Dell Comput. Corp.*,
  144 N.M. 464 (2008) ................................................................................................... 23

*Herron v. Century BMW*,
  387 S.C. 525 (2010) ................................................................................................... 23

*Kinkel v. Cingular Wireless LLC*,
  223 Ill. 2d 1 (2006) ................................................................................................... 23

*Leonard v. Terminix Intern. Co., L.P.*,
  854 So. 2d 529 (Ala. 2002) ........................................................................................ 23

*Los Angeles, LLC*,
  59 Cal. 4th 348 (2014) ............................................................................................... 24

*Machado v. System4 LLC*,
  465 Mass. 508 (2013) ................................................................................................ 23

*Muhammad v. Cnty. Bank of Rehoboth Beach*,
  189 N.J. 1 (2006) ...................................................................................................... 23

*Scott v. Cingular Wireless*,
  160 Wash. 2d 843 (2007) ........................................................................................... 23

*State ex rel. Dunlap v. Berger*,
  211 W. Va. 549 (2002) ............................................................................................... 23

*Thibodeau v. Comcast Corp.*,
  912 A.2d 874 (Pa. Super. Ct. 2006) ............................................................................ 23

*Tillman v. Com. Credit Loans, Inc.*,
  362 N.C. 93 (2008) ................................................................................................... 23

*Torrence v. Nationwide Budget Fin.*,
  232 N.C. App. 306 (2014) .......................................................................................... 24

*Vasquez-Lopez v. Beneficial Or., Inc.*,
  210 Or. App. 553 (Or. App. Ct. 2007) ........................................................................ 23

*Whitney v. Alltel Commc'ns, Inc.*,
  173 S.W.3d 30 (Mo. App. 2005) ................................................................................. 23

*Wisconsin Auto Title Loans, Inc. v. Jones*,
  290 Wis. 2d 514 (2006) ............................................................................................. 23

ix

**NLRB Decisions**

*200 E. 81st Rest. Corp.*,
  362 N.L.R.B. 1238 (2015) ................................................................................. 18

*Cordua Rests., Inc.*,
  368 N.L.R.B. No. 43 (2019) .............................................................................. 18

*D.R. Horton, Inc.*,
  357 N.L.R.B No. 184 (2012) ............................................................................. 18

*Murphy Oil USA, Inc.*,
  361 N.L.R.B No. 72 (2014) ............................................................................... 18

**Constitution**

N.Y. Const. art. I, § 17 ......................................................................................... 20

**Statutes**

9 U.S.C. § 1 ....................................................................................................... 1, 2

9 U.S.C. § 2 .......................................................................................................... 2

N.Y. Lab. L. § 21 ................................................................................................. 11

N.Y. Lab. L. § 198 ............................................................................................... 11

N.Y. Lab. L. § 198-a ............................................................................................ 11

N.Y. Lab. L. § 215 ............................................................................................... 11

N.Y. Lab. L. § 345 ............................................................................................... 11

N.Y. Lab. L. § 650 ............................................................................................... 10

N.Y. Lab. L. § 655 ............................................................................................... 13

N.Y. Lab. L. § 656 ............................................................................................... 13

N.Y. Lab. L. § 657 ............................................................................................... 13

N.Y. Lab. L. § 658 ............................................................................................... 13

N.Y. Lab. L. § 659 ................................................................................. 13

N.Y. Lab. L. § 660 ................................................................................. 11

N.Y. Lab. L. § 662 ................................................................................. 11

N.Y. Lab. L. § 663 ................................................................................. 11

N.Y. Lab. L. § 700 ............................................................................ 17, 21

N.Y. Lab. L. § 703 ................................................................................. 17

N.Y. Lab. L. § 862-b ............................................................................. 19

N.Y. Lab. L. § 862-d ............................................................................. 11

**NEW YORK LEGISLATIVE MATERIALS**

Bill Jacket, L. 2010, chap. 564 ............................................................. 12

Bill Jacket, L. 2013, chap. 558 ........................................................ 15, 16

Bill Jacket, L. 2014, chap. 7 .................................................................. 16

**NEW YORK EXECUTIVE ORDERS AND MATERIALS**

Exec. Order No. 159 (July 20, 2016) ................................................................

Exec. Order No. 192 (Jan. 15, 2019) .................................................... 17

N.Y. Dep't of Lab., Ann. Rep. of Joint Enf't Task Force on Emp. Misclass. (2015) ................. 15

Press Release, Gov'r N.Y.,
   Gov'r Cuomo Announces Multi-Agency Enforce. Task Force to Tackle Abuse in the Nail
   Salon Industry (May 11, 2015) ............................................................ 14

Press Release, Gov'r of N.Y.,
   Gov'r Cuomo Instruct Lab. Dep't to Convene Wage Board (May 7, 2015) .......................... 10

**BOOK, ARTICLES, AND REPORTS**

Bryan Garner, The Law of Judicial Precedent (2016) .................................................. 14

Sarah Maslin Nir, The Price of Nice Nails, New York Times (May 7, 2015) ............................ 14

Catherine Ruckelshaus & Celidh Gao, <u>Ind. Contractor Misclass. Imposes Huge Costs on Workers & Federal & State Treasuries</u>, Nat'l Emp't Law Project (September 2017) ............ 15

David Weil, <u>How to Make Emp't Fair in an Age of Cont'g &amp; Temp Work</u>, Harv. Bus. Rev. (Mar. 24, 2017) ..................................................................................................................... 15

## PRELIMINARY STATEMENT

Defendants TCA Logistics Corp. ("TCA") and Thomas Eletto (collectively, "Defendants") moved to compel Plaintiff Jose Castro's ("Plaintiff" or "Castro") claims to arbitration.  In doing so, they virtually ignore the Supreme Court's recent landmark decision in *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019) holding that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, exempts delivery drivers labelled as independent contractors from being compelled to arbitration. The facts relevant to this motion are straightforward.  Plaintiff delivered commercial goods interstate, in New York and Connecticut, working as a truck driver for TCA – a transportation company.  Plaintiff is undoubtedly a "transportation worker" under Section 1 of the FAA and therefore may not be compelled to arbitrate his claims under federal law.  *See* infra § I.

In the absence of FAA preemption, Defendants' attempt to compel arbitration via the New York Civil Practice Law & Rules ("CPLR") also fails.  First, under the plain terms of the arbitration agreement at issue ("Agreement"), Plaintiff may not be compelled to arbitration because the FAA, "an Act of Congress," exempts his claims from arbitration.  *See* Dkt. No. 11-2 (Disp. Res. P.) ¶ 4 (PageID #62); *see* infra § II(A).  Second, New York public policy dictates that wage cases under the New York Labor Law ("NYLL") cannot be forced into arbitration.  Drawing from the pronouncements of all three branches of state government, it is apparent that the NYLL reflects a public policy concern of the highest magnitude, which the Court of Appeals has excepted from mandatory arbitration.  *See* infra § II(B).  And, the class action waiver in the Agreement conflicts with New York State labor policies that preclude employers from interfering with their workers' rights to organize and engage in activities for their mutual workplace benefit.  *Id*. § II(C).

Given the express language of the Agreement and the important policy issues at stake, as set forth below, this Court should deny Defendants' Motion.

1

## FACTUAL BACKGROUND

TCA is a transportation company that delivers commercial goods all over the East Coast, including New York where TCA is headquartered.  *See* Dkt. 1 (Compl.) at ¶ 29.  TCA employed Castro and other drivers to deliver these goods.  Castro was required to pick up commercial goods from a warehouse in Hicksville, New York and deliver them along assigned routes spanning from Long Island to Connecticut and Upstate New York.  *See* Castro Decl. (Ex. 1) at ¶¶ 7-8.

Castro worked for TCA from about 2015 to April 2019.  He primarily drove a truck and delivered mattresses and related goods for TCA's client, Mattress Firm.  *Id.* at ¶ 4.  As a truck driver for TCA, Castro was required to maintain a DOT medical certificate and had a DOT medical card reflecting his fitness to drive a truck.  *Id.* at ¶ 5.  In addition to his New York deliveries, at least once a week, TCA assigned him to deliver to Connecticut.  *Id.* at ¶ 7.

When Castro worked as a truck driver for Defendants, he worked approximately 60 to 70 hours per week.  *Id.* at ¶ 9.  The overwhelming majority of his working hours were spent driving a truck in connection with TCA's transportation of commercial goods for Mattress Firm.  *Id.*; Dkt. 1 (Compl.) ¶ 46.  Any related installation work he was required to perform upon delivery was merely part and parcel with his transportation work.  *Id.* at ¶ 10.

## ARGUMENT

## I.    Because Plaintiff's' Claims Are Exempt from the FAA, There Is No Basis Under Federal Law to Compel Him to Arbitration.

The FAA provides that agreements to arbitrate disputes within commercial contracts are valid and enforceable.  9 U.S.C. § 2.  But, Section 1 of the FAA exempts from its coverage all "contracts of employment of . . . other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.  Workers like Plaintiff qualify for the Section 1 exemption where they deliver goods that are "within the flow of interstate commerce."  *Circuit City Stores, Inc. v. Adams*, 532 U.S.

2

105, 118 (2001).  The First and Ninth Circuits have clarified that the focus remains whether the worker belongs to a "class of workers" engaged in the interstate transportation of goods.  *Waithaka v. Amazon.com, Inc.* ("*Waithaka II*"), 966 F.3d 10, 22 (1st Cir. 2020) (Amazon delivery drivers making intrastate deliveries were transportation workers engaged interstate commerce); *Rittmann v. Amazon.com, Inc.*, __ F.3d __, 2020 WL 4814142, at *9 (9th Cir. Aug. 19, 2020) (quoting *Waithaka*, 966 F.3d at 19).  This is a determination for the Court, even where the arbitration agreement has a delegation clause.  *New Prime*, 139 S. Ct. at 537.

The Section 1 exemption applies where an individual: (1) works for a business pursuant to a "contract of employment," (2) is a "transportation worker," and (3) is "engaged in interstate commerce."  *See Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir. 2001) (citing *Circuit City Stores, Inc.*, 532 U.S. at 118).  Plaintiff satisfies all three criteria.

Here, only the second criterion is arguably disputed.  The first criterion is met because Plaintiff worked for Defendants and agreements to work as independent contractors – not just as employees – are "contracts of employment" element under Section 1.  *New Prime*, 139 S. Ct. at 543-44.  And, Defendants do not dispute that Plaintiff worked in a business engaged in interstate commerce – criterion three.  *See* Dkt. 11-3 (Defs.' Mem. of Law) at 6-7 ("The Agreement contemplates Plaintiff's performance of transportation, delivery and installation services on behalf of TCA, a company that has operations in states along the East Coast, for customers in New York, involving merchandise that has travelled in the stream of interstate commerce."); *see, e.g.*, *Siller v. L & F Distribs., Ltd.*, 109 F.3d 765, 1997 WL 114907, at *2 (5th Cir. 1997) (unpublished) (driver was engaged in interstate commerce where less than half of the hauls "contained some out-of-state products," noting that "even if the hauls contain only slight amounts of goods traveling in interstate commerce, they will be deemed interstate commerce in its entirety").

A.  **Plaintiff is a "Transportation Worker."**

Defendants' claim that Plaintiff, a truck driver who delivered products in New York and Connecticut, is not a transportation worker is demonstrably wrong.  Truck drivers responsible for delivering goods are quintessential transportation workers.  *See, e.g.*, *Smith, v. Allstate Power Vac, Inc*, No. 17 Civ. 7475, 2020 WL 5086584, at *4 (E.D.N.Y. Aug. 26, 2020) ("[Truck driver] was fundamentally involved in the interstate movement of goods, and therefore she was a transportation worker exempted by Section 1."); *Seven-Up/RC Bottling Co. of S. Cal. v. Amalgamated Indus. Workers Union*, 183 F. App'x 643, 643-44 (9th Cir. 2006) (unpublished) ("Semi-Drivers, Pre-Sales Delivery Drivers, Fountain/Vending Delivery Drivers, and a Utility Driver . . . are transportation workers."); *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005) (stating that individuals who drive delivery trucks for a company in the transportation industry are "indisputably . . . transportation worker[s]").

Plaintiff is a member of *precisely* the class of workers that falls within the exemption, as he operates a truck delivering commercial products within the flow of interstate commerce.  *See Waithaka v. Amazon.com, Inc.* ("*Waithaka I*"), 404 F. Supp. 3d 335, 340 (D. Mass. 2019) (finding that there is a "consensus" among courts that "truck drivers" fall within the scope of the Section 1 exemption, and collecting cases), *aff'd*, 966 F.3d 10 (1st Cir. 2020); *see also Carr v. Transam Trucking, Inc.*, No. 3:07 Civ. 1944, 2008 WL 1776435, at *2 (N.D. Tex. Apr. 14, 2008) ("Truck drivers, like plaintiff, are considered 'transportation workers' within the meaning of this exemption."); *Harden*, 249 F.3d at 1140 (delivery driver who was contracted to deliver packages exempt from FAA); *Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 957 (7th Cir. 2012) (local trucker who occasionally engaged in interstate transport is a transportation worker under the FAA).  Whether or not Plaintiff crossed state lines while driving

4

– which he did – is not dispositive:  intrastate drivers may also fall into this FAA exemption.  *See Waithaka*, 966 F.3d 10 (Amazon's "last-mile" delivery workers who haul goods on the final legs of interstate journeys are transportation workers "engaged in . . . interstate commerce," regardless of whether the workers themselves physically cross state lines); *accord. Rittmann*, 2020 WL 4814142; *see also Singh v. Uber Techs. Inc*., 939 F.3d 210, 226 (3d Cir. 2019) ("the FAA may operate to exclude from FAA coverage the contracts of employment of all classes of transportation workers," including Uber drivers who perform interstate trips);  *Bacashihua v. U.S. Postal Serv*., 859 F.2d 402, 404-05 (6th Cir. 1988) (postal worker, who made only intrastate deliveries, was engaged in interstate commerce); *Ward v. Express Messenger Sys. Inc.*, 413 F. Supp. 3d 1079, 1087 (D. Colo. 2019) (last-mile delivery drivers qualified for the FAA exemption even though their deliveries all occurred within Colorado).  The exemption also applies to workers whose duties are "closely related" to the transportation of goods.  *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 592-94 (3d Cir. 2004) ("[H]ad Congress intended the residual clause of the [transportation worker] exemption to cover only those workers who physically transported goods across state lines, it would have phrased the FAA's language accordingly.").

In sum, because Plaintiff, a truck driver, performs deliveries of goods and products as the an admitted function of his work for a transportation company, there is no conceivable way that he is not a "transportation worker[]," regardless of how Defendants characterize certain aspects of his delivery work.

**B. *Bissonnette* is inapposite.**

Defendants' reliance on *Bissonette v. Lepage Bakeries Park St., LLC*, No. 3:19 Civ. 965, 2020 WL 2494763 (D. Conn. May 14, 2020) to avoid the application of the FAA exemption is misplaced.  *Bissonette* is factually distinct.  *Bissonnette* involved individuals who were "akin to

sales workers or managers . . . generally responsible for all aspects of a bakery products distribution business . . . ."  2020 WL 2494763, at *6.  Rather, this case resembles the scenario in *Smith*.

Like in *Smith*, here, "it is beyond dispute that [Plaintiff] worked in a trucking industry that transported cargo interstate" and his "transportation activities were a fundamental, not merely incidental, aspect of [his] job."  *Smith*, 2020 WL 5086584, at *5 (distinguishing *Bissonette* and other cases).  That is, Plaintiff's primary duty was to transport mattresses and related goods – the installation of those items and transportation of the customers' garbage were part and parcel with her delivery work.  *See id.* ("[It] is beyond dispute that Smith worked in a trucking industry that transported cargo interstate. Her waste transportation activities were a fundamental, not merely incidental, aspect of her job."); *Martins v. Flowers Foods, Inc.*, No. 8:16 Civ. 3145, 2020 WL 5223772, at *4 (M.D. Fla. Mar. 12, 2020) (plaintiffs held to be transportation workers where they or their employees picked up ordered produced from defendants' warehouses and deliver then to customers, even though they may not have personally delivered the baked goods in question). Thus, the question is not even close – Plaintiff is a transportation worker exempt from the FAA.

## II.   New York Law is an Inadequate Vehicle to Compel this Matter to Arbitration.

State law governs when the FAA does not apply.  *Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 381 (E.D.N.Y. 2016).  Because the Driver Agreement provides that New York is law to govern the agreement, Defendants must satisfy New York's standard for a motion to compel arbitration.  Dkt No. 11-2 (Ind. Driver Agr.) ¶ 22 (PageID #57).

Courts may only compel claims to arbitration "where the parties agree to arbitrate that kind of dispute, and where it is lawful for them to do so."  *In re City of Johnstown*, 99 N.Y.2d 273, 278 (2002).  There is "two-part test" to make this determination:  (1)  whether the parties agreed to arbitrate the claims; and (2) whether any statute, constitutional provision, or public policy prohibits

arbitration. *Id.* With regards to the first prong, New York requires a movant to prove a "clear, explicit and unequivocal agreement to arbitrate." *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 N.Y.3d 371, 374 (2006) (internal quotations and citations omitted).

Here, Defendants fail both prongs. As explained in Section A below, there was no unequivocal agreement to arbitrate the claims at bar because the terms of the Agreement exclude from arbitration disputes barred by federal law, which must include those not covered by the FAA. And, as set forth in Section B below, Defendants' motion fails the send prong because (1) the NYLL reflects New York's highest priorities and (2) the class waiver is invalid.

### A. The Agreement Precludes Mandatory Arbitration Where the FAA Prohibits It.

Courts can only compel parties to arbitrate claims they contractually agreed to submit to arbitrations. *Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 26 N.Y.3d 659, 674 (2016). Agreements to arbitrate are enforced according to their terms. *Id.* at 665 (citing *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). It is the movant's burden to prove an agreement to arbitrate. *Am. Centennial Ins. Co. v. Williams*, 233 A.D.2d 320, 320 (2d Dep't 1996); *Peterson v. Beale*, No. 92 Civ. 5412, 1995 WL 479425, at *3 (S.D.N.Y. Aug. 11, 1995).

### 1. The Agreement Precludes Mandatory Arbitration by Its' Own Terms.

By its terms, the arbitration agreement here, "does not apply to any claim that may not be arbitrated as provided by an Act of Congress[.]" *See* Dkt. No. 11-2 (Disp. Res. P.) ¶ 4 (PageID #62). As discussed above, the FAA, an act of Congress, excludes employment disputes of transportation workers from being compelled to arbitration. Thus, by the very terms of Defendants' Agreement, this matter cannot be compelled to arbitration. *See Bissonette*, 2020 WL 2494763, at *4 n. 7 (concluding that the court could not compel the case to arbitration under

Connecticut law if the FAA exemption applied, because the terms of the agreement precluded the court from applying Connecticut law in a manner that was inconsistent with the FAA).

### 2. Defendants' Authority is Inapposite.

*Burgos v. Ne. Logistics, Inc.*, and *Diaz* enforced the arbitration clauses at issue under New York law because "New York arbitration law 'does not exempt transportation workers from arbitration[.]'" *Burgos v. Ne. Logistics, Inc.*, No. 15 Civ. 6840, 2017 WL 10187756, at *4 (E.D.N.Y. Mar. 30, 2017) (quoting *Diaz*, 167 F. Supp. 3d at 381). This, however, is not in dispute. Rather, the central issue here is whether this particular agreement precludes the Court from compelling this case to arbitration. Because there is express language in the contract here that precludes Plaintiff from being compelled to arbitration where Congress has excluded him, *Burgos* and *Diaz* do not apply.

### B. Mandatory Arbitration of NYLL Claims is Precluded by New York Public Policy.

"[A]rbitration agreements are unenforceable where substantive rights, embodied by statute, express a strong public policy which must be judicially enforced." *Wertheim & Co. v. Halpert*, 48 N.Y.2d 681, 683 (1979), *abrogated in part by Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623 (1993). Statutory claims that "represent[] public policy of the first magnitude" will not be forced to arbitration. *Aimcee Wholesale Corp. v. Tomar Prods., Inc.*, 21 N.Y.2d 621, 625 (1968). The Court should follow this precedent because: (1) *Aimcee* and *Wertheim* are good law; (2) the NYLL wage protections meet this criterion; and (3) the disputes at issue here are of public concern.

These matters of public policy are "threshold issue[s]" to be decided by the Court. *Enlarged City Sch. Dist. of Middletown New York v. Civil Serv. Emps. Ass'n, Inc.*, 148 A.D.3d 1146, 1147 (2d Dep't 2017); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Benjamin*, 1 A.D.3d 39, 43 (1st Dep't 2003) (public policy concerns are "reserved" for court); *see also Larrison v. Scarola Reavis & Parent LLP*, 11 Misc. 3d 572, 579 (Sup. Ct. 2005) (staying already-commenced

arbitration of fee dispute between attorney and client on public policy grounds, even though the contract provided for arbitration under AAA rules, which delegates arbitrability to the arbitrator).

### 1. *Werthiem* and *Aimcee* are good law.

*Werthiem*'s and *Aimcee*'s application to New York claims subject to New York's arbitration laws has not been challenged. Although *Wertheim* does not control cases "governed by the FAA" – given *Gilmer* and other Supreme Court precedent, Court of Appeals precedent like *Wertheim* "remain independently operative" in the FAA's absence. *Fletcher*, 81 N.Y.2d at 629; *accord*. *Waithaka II*, 966 F.3d at 33 ("[Although] such state policies must give way when the FAA governs a dispute, the policies remain intact where, as here, the FAA does not preempt state law."). Thus, *Wertheim*, *Aimcee*, and their progeny are still binding authority. *See, e.g.*, *Denson v. Donald J. Trump For President, Inc.*, 180 A.D.3d 446, 450 (1st Dep't 2020) (listing *Werthiem* as an example of when "public policy renders a particular issue nonarbitrable"); *In re Meisels*, 10 Misc. 3d 659, 662 (Sup. Ct. 2005) (noting that *Fletcher* did not disturb *Aimcee*).

### 2. The NYLL enforces public policy concerns that are paramount in New York.

To conclude that New York's antitrust statute represented public policy of the highest order, the Court of Appeals examined the comprehensive statutory scheme, noting, in particular, that the statute: (1) voided every contract violative of the antitrust law; (2) enacted penal sanctions for violations; (3) empowered the executive branch to investigate antitrust allegations and seek injunctive relief; and (4) authorized private civil actions for damages. *See id*. at 625. In extending this rule of law to employment discrimination matters, the First Department stated that the it was absurd to claim that "public policies underlying Title VII of the Civil Rights Act . . . and [the New York City Human Rights Law] less important than those involved in *Aimcee*." *Wertheim & Co. v. Halpert*, 65 A.D.2d 724, 725 (1st Dep't 1978), *aff'd*, 48 N.Y.2d 681 (1979). The NYLL is on all fours with the state antitrust laws and *Aimcee*'s holding must extend to it.

9

**a. Enforcing wage rights is a vital interest to the State of New York.**

The "remedial" NYLL is "designed to relieve the financial hardship experienced by persons employed in occupations 'at wages insufficient to provide adequate maintenance for themselves and their families.'" *Archie v. Grand Cent. P'ship, Inc*., 997 F. Supp. 504, 535 (S.D.N.Y. 1998) (Sotomayor, J.) (quoting *Settlement Home Care, Inc. v. Indust. Bd. of Appeals of Dep't of Lab.*, 151 A.D.2d 580, 581 (2d Dep't 1989)); *see also Scholtisek v. Eldre Corp*., 697 F. Supp. 2d 445, 467 (W.D.N.Y. 2010) (noting that the NYLL "constitutes remedial legislation"). New York's public policy "is that the interest in enforcing wages and hours laws on behalf of all workers is paramount." *See Garcia v. Pasquareto*, 11 Misc. 3d 1, 2 (App. Term 2004); *Hobart v. Mendelson*, No. 2553/18, 2020 N.Y. Slip Op. 50161(U), at *2 (App. Term. Jan. 30, 2020).[1]

Given the impact that substandard wages have on health, safety, and the economy,[2] "it is the declared policy of the state of New York that such conditions be eliminated as rapidly as practicable . . . ." N.Y. Lab. L. § 650; *see also Angello v. Labor Ready, Inc*., 7 N.Y.3d 579, 583 (2006) ("The purpose of Labor Law article 6 is to strengthen and clarify the rights of employees to the payment of wages." (citations and internal quotations omitted)); *Simel v. JP Morgan Chase*, No. 05 Civ. 9750, 2007 WL 809689, at *5 (S.D.N.Y. Mar. 19, 2007) (noting same regarding NYLL

---

[1]     This proclamation has been quoted repeatedly. *See, e.g.*, *Kenan v. Levine & Blit, PLLC*, 67 Misc. 3d 1240(A), 2020 N.Y. Slip Op. 50794(U), at *5 n. 2 (Sup. Ct. June 29, 2020) (quoting same from *Garcia*); *Molina v. Two Bros. Scrap Metal, Inc*., No. 604691/16, 2018 N.Y. Slip Op. 50854(U), at *2 (Sup. Ct. May 14, 2018) (same), *class action certified by* 2018 N.Y. Slip Op. 32537(U), at *6 (Sup. Ct. Sep. 24, 2018) (same); *Pineda v. Kel-Tech Const., Inc*., 15 Misc. 3d 176, 185 (Sup. Ct. 2007) (same); *see also Robinson v Big City Yonkers, Inc.*, No. 600159/16, 2016 WL 7032150, at *2 (Sup. Ct. Nov. 29, 2016) (New York has a "paramount interest in enforcing employment laws, in particular regarding wages and hours." (quotations and citations omitted)).

[2]     The impact of substandard wages and wage violations on the economy and public health is significant. *See, e.g.*, Press Release, Gov'r of N.Y., Gov'r Cuomo Instruct Lab. Dep't to Convene Wage Board (May 7, 2015) (citing studies) (Ex. 2).

§ 193).  As such, "New York has provided statutory protection for workers' wages for more than a century." *Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 223 (2000).

### b.  The public policy interests underlying NYLL's wage protections are on all fours with discrimination and antitrust law.

Just like antitrust law in *Aimcee*, the NYLL:

(1)  cannot be avoided through private contract, N.Y. Lab. L. § 663 ("Any agreement between the employee, and the employer to work for less than such wage shall be no defense . . . ."); *see, e.g.*, *Mitropoulos v. 401 Sunrise Corp.*, No. 17 Civ. 3618, 2019 WL 2452348, at *1 (E.D.N.Y. June 12, 2019) ("Courts in this circuit have similarly rejected claims for indemnification under NYLL . . .  and further foreclosed such claims even when styled as claims for contract damages rather than indemnification." (citations omitted)); *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 311 (E.D.N.Y. 2009) ("[A]n employee may not waive the protections of the [NYLL].");

(2)  provides for penal sanctions for violations, N.Y. Lab. L. §§ 198-a(1), 662(1), 862-d(4) (criminal penalties for misclassification of truckers); *see, e.g.*, *People v. DiSalvo*, 130 A.D.3d 841 (2d Dep't 2015) (upholding incarceration and probation ); *People v. Levine*, 38 Misc. 3d 136(A), 2013 N.Y. Slip Op. 50146(U) (App. Term 2013) (upholding conviction);

(3)  allows the for the Department of Labor and Attorney General to investigate violations, pursue back wages and penalties, and seek injunctive relief, N.Y. Lab. L. §§ 21, 198, 345 660, 663(2); *People ex rel. Spitzer v. 14 W. Garment Factory Corp.*, 182 Misc. 2d 146, 150, (Sup. Ct. 1999) (discussing the Attorney General's authority to seek a court order enjoining the sale and shipment of garments knowingly made by an employer in violation of the wage payment protections of the NYLL (NYLL Arts. 6 & 19)); *In re Ngan Gung Rest., Inc.*, 183 B.R. 689, 690 (Bankr. S.D.N.Y. 1995) (discussing Attorney General's authority under Executive Law § 63(12) to investigate and enforce in court the "basic work-place standards" in NYLL as part of "the state's police powers to protect its citizens"); and

(4)  private rights of action, N.Y. Lab. L. §§ 198, 663(1).[3]

---

[3]       The NYLL retaliation provisions also reflect the magnitude of the policy concerns at issue. The NYLL prohibits retaliation against employees who exercise their rights under the NYLL. N.Y. Lab. L. § 215(1)(a).  This prohibition may be enforced by the Department of Labor, in a private action, or in criminal court – as it is a class B misdemeanor. *Id.* §§ 215(2)(a), 3.  And, like the antitrust law, the Attorney General must be given notice of all retaliation claims brought by private parties. *Id.* § 215(3); *Aimcee*, 21 N.Y.2d at 625 ("It is also significant that, because of the

Additionally, the *Aimcee* court was concerned that: (a) arbitration impedes the "deterrent effect" of the antitrust law; (b) many issues in the law had never been "resolved definitively" in a way that would enable arbitrators to follow clear precedent; and (c) permits violators to "insulate their transgressions" from public scrutiny, "while nominally assuring obedience" to the law. *Aimcee*, 21 N.Y.2d at 629.  These further considerations track the NYLL as well.

First, deterring wage theft is central to the NYLL.  *See* Senate Introducer's Mem. in Supp., Bill Jacket, L. 2010, chap. 564 at 8 ("The penalties currently in place for employers paying less than minimum wage are minimal and offer little deterrent - this will change dramatically with this[] legislation."), Dep't of Lab. Ltr. In Supp., Bill Jacket, L. 2010, chap. 564 at 9 ("'The [legislation amending the NYLL] contains numerous provisions intended to deter and punish the nonpayment or underpayment of wages to employees.") (Ex. 3); *see e.g.*, *Thomas v. Meyers Assocs., L.P.*, No. 651720/2011, 39 Misc. 3d 1217(A), 2013 WL 1777483, at \*12 (Sup. Ct. Apr. 18, 2013) (discussing societal importance to deterring wage violations).   Public deterrence not only helps workers but protects "law-abiding" employers from the "scofflaw employers" gaining "an improper competitive advantage."  *See* Exec. Order No. 159 (July 20, 2016) at 1 (Ex. 4).

Second, as explained more fully in sub-section (d) below, the NYLL's Fair Play Act, which is central to this case, is relatively new law that took effect in 2014.  Few opinions on its' provisions exist.  *See Kloppel v. HomeDeliveryLink, Inc.*, No. 17 Civ. 6296, 2018 WL 1089682, at \*6 (W.D.N.Y. Feb. 28, 2018) (motion to dismiss on preemption grounds denied), *adopted by*, 2019 WL 1226017 (W.D.N.Y. Mar. 15, 2019), *mot. on pleadings denied by*, 2019 WL 6111523, at \*4 (W.D.N.Y. Nov. 18, 2019) (truck driver plead employee status under the NYLL, mentioning Fair

---

public interest involved in Donnelly Act suits, in 1959 a statutory requirement was added that the Attorney-General be given notice of all civil actions brought by private parties under article 2.").

Play Act), *class cert. granted by*, 2020 WL 2897014, at \*7 (W.D.N.Y. June 3, 2020) (granting

class certification to plaintiffs); *NY GO Express, Inc. v. New York State Ins. Fund*, 60 Misc. 3d

536, 540-543 (Sup. Ct. 2018) (Article 78 decision related to workers' compensation); *Padovano*

*v. FedEx Ground Package Sys., Inc.*, No. 16 Civ. 17, 2016 WL 7056574, at \*4 (W.D.N.Y. Dec. 5,

2016) (motion to dismiss denied); *Drake v. The Port Auth. of New York & New Jersey*, No.

703816/2014, 2015 WL 9805295, at \*2 (Sup. Ct. Dec. 29, 2015) (denying summary judgement in

a tort action).  As a result, the public prosecution of this case is important to establish precedent

for courts, arbitrators, and employers alike.  *See Epic Sys. Corp. v. Lewis* ("*Epic*"), 138 S. Ct. 1612,

1648 (2018) (Ginsberg, J. dissenting) (noting that "individual arbitration of [wage claims] can give

rise to anomalous results" and "irreconcilable answers would remain unchecked").

> Lastly, the importance of NYLL cases like this to the industry is significant, given the years

of worker misclassification in this industry, as explained more fully in sub-section (d).  *See* infra

§ II(B)(2)(d); *see also Epic*, 138 S. Ct. at 1648 (Ginsberg, J. dissenting) (discussing "widespread"

nature of wage claims, inability of government agencies to keep up with enforcement, and that the

"enforcement gap is almost certain to widen" if "employer can stave off collective employment

litigation aimed at obtaining redress for wage and hour refractions").

### c. The public nature of NYLL lawsuits is essential to the ecosystem in which our state's wage rules are created and monitored.

> Requiring the private adjudication of NYLL wage claims is counter to the public nature of

how New York's wage rates, rules, and standards are determined.  In New York, the minimum

wage regulations, overtime exemptions, and other wage-and-hour rules are mostly set through the

wage board process – as opposed to by statutory law.  *See* N.Y. Lab. L. §§ 655–59.  This process

"mandates transparency and the inclusion of various affected stakeholders."  *Andryeyeva v. New*

*York Health Care, Inc*., 33 N.Y.3d 152, 186 (2019) (Garcia, J. dissenting).  Burying disputes and

violations of the NYLL in arbitration, as opposed to in the public courthouses of this state, hinders the state's ability to address concerns through the wage-board process or other executive action.[4] These concerns further highlight the need to confirm that *Aimcee* extends to the NYLL. *See Aimcee*, 21 N.Y.2d at 627 ("The evil is that, if the enforcement of antitrust policies is left in the hands of arbitrators, erroneous decisions will have adverse consequences for the public in general, and the guardians of the public interest, the courts, will have no say in the results reached.").

### d. Authority to the contrary is sparse and distinguishable.

The district courts that have compelled cases to arbitration, despite an appeal to *Aimcee* and *Wertheim*, were facing federal claims. *See, e.g.*, *Zambrano v. Strategic Delivery Sols., LLC*, No. 15 Civ. 8410, 2016 WL 5339552, at *9 (S.D.N.Y. Sept. 22, 2016) (FLSA and NYLL claims). Although a different type of case, Judge Spatt addressed it this way:

> [E]ven if the FAA does not apply to the parties' arbitration agreement, given that plaintiff's retaliatory discharge claim arises under federal law, we do not think that FAA jurisprudence should be totally ignored. It would be illogical for a New York court to rely on a public policy reflected in a federal law to prevent arbitration of a federal right when federal arbitrational law, were it to apply, would sanction such arbitration.

*U.S. ex rel. Mikes v. Straus*, 897 F. Supp. 805, 808 (S.D.N.Y. 1995)

Here, this is purely a New York matter – the FAA and federal substantive law are not at issue. Thus, the fact that our district courts "consistently found FLSA and NYLL claims to be arbitrable," *Zambrano*, 2016 WL 5339552, at *9, misses the point. Those courts did not address

---

[4] A recent example of this is the 2015 multi-agency task force empaneled to address wage abuses in the nail salon industry after some high-profile investigative reporting on the subject. *See* Press Release, Gov'r N.Y., Gov'r Cuomo Announces Multi-Agency Enforce. Task Force to Tackle Abuse in the Nail Salon Industry (May 11, 2015)  (Ex. 5); Sarah Maslin Nir, The Price of Nice Nails, New York Times (May 7, 2015) ("[L]argely overlooked is the rampant exploitation of those who toil in the industry. The New York Times . . . found that a vast majority of workers are paid below minimum wage[.]") (Ex. 6).

the issue here:  whether a district court can apply the CPLR to compel arbitration of NYLL claims where federal arbitration law and substantive federal law is inapplicable.  Given the weight of public concern on wage claims under the NYLL, *Werthiem and Aimcee* must be followed.

> **e.  This case represents a particular matter of public concern – the proper classification of truckers.**

The misclassification of employees as independent contractors is a significant problem in today's economy.  *See* Senate Introducer's Mem. in Supp., Bill Jacket, L. 2013, chap. 558 at 6 ("[I]n New York State between, 2002 and 2004, nearly 40,000 employers misclassified more than 700,000 workers – more than 10[%] of the state's private sector workforce.") (Ex. 7); N.Y. Dep't of Lab., Ann. Rep. of Joint Enf't Task Force on Emp. Misclass. 3 (2015) ("Annual Report") (identifying almost 140,000 instances of misclassification and $2.1 billion in unreported wages between 2007 and 2015) (Ex. 8).  Misclassification denies individuals' workplace protections, robs unemployment insurance and workers' compensation funds, and reduces tax revenues.  *See* Catherine Ruckelshaus & Celidh Gao, Ind. Contractor Misclass. Imposes Huge Costs on Workers & Federal & State Treasuries, Nat'l Emp't Law Project (September 2017) (Ex. 9); Senate Introducer's Mem. in Supp., Bill Jacket, L. 2013, chap. 558 at 6 ("[Misclassified drivers are] deprived of proper social security benefits, healthcare, workers' compensations, unemployment benefits, minimum wage protections, rights to join a union, and the right to a safe and healthful workplace.") (Ex. 7).  The result is depressed wages, harm to businesses that cannot compete, and harm to taxpayers through the underfunding of essential safety nets like unemployment and worker's compensation.  *See* David Weil, How to Make Emp't Fair in an Age of Cont'g & Temp Work, Harv. Bus. Rev. (Mar. 24, 2017) (Ex. 10).  Workers in the transportation industry are particularly vulnerable to misclassification.  Senate Introducer's Mem. in Supp., Bill Jacket, L. 2013, chap. 558 at 6-7 (noting that "[m]isclassification rates are disproportionately high in the

trucking industry" and that proper classification would protect workers' "rights intended by law" while reducing the trucking industry's environmental impact) (Ex. 7). "These workers suffer the best of both worlds – they toil without the protections and benefits of employees, yet are without the control over their work that truly legitimate independent contractors enjoy." Annual Report, at 4 (Ex. 8).

The Fair Play Act "was enacted as a measure to curb widespread abuses in the trucking industry stemming from the misclassification of drivers as independent contractors, resulting in unfavorable consequences for both the drivers and the public." *NY GO Express, Inc*., 60 Misc. 3d at 540; *see* Senate Introducer's Mem. in Supp., Bill Jacket, L. 2014, chap. 7 at 7 ("[The Fair Play Act] was enacted to prevent the misclassification of employees in the trucking industry.") (Ex. 11). When signing the Fair Play Act into law, Governor Andrew Cuomo remarked that the law "establishe[d] a statutory test for determining whether individuals in the trucking industry are classified as employees or independent contractors[,]" which was intended to "bring clarity to this area of law." Gov'r Mem., Bill Jacket, L. 2013, chap. 558 at 3 (noting that the existing test "resulted in inconsistent standards, causing confusion for all affected parties.") (Ex. 7).

This all highlights that NYLL claims – particularly misclassification claims involving truckers – represent first-magnitude public policy. Despite having a new standard, much clarity to this area of law is still needed. New York courts have yet to engage meaningfully with the Fair Play Act, so as to guide businesses and agencies. Such court opinions will not only impact wage cases like this, but also unemployment and workers compensation in trucking industry. Guidance in this area also touches government contracting, as State entities must evaluate whether businesses are barred from contracting with the State by virtue of having violated enumerate statutes including the Fair Play Act. *See* Exec. Order No. 192 (Jan. 15, 2019) at 1 (Ex. 12).

This case, therefore, cannot be compelled to arbitration under New York law because the public prosecution of NYLL claims is of the utmost importance to this state.

### A. The Class Arbitration Waiver in the Agreement Renders the Entire Arbitration Agreement Unenforceable.

The Court should invalidate the agreement because New York law precludes class arbitration waivers. The First Department adopted the rule coming from the NLRB and federal court cases that class arbitration waivers interfere with workers' rights to engage in concerted activity for the mutual aid and protection. *Gold v. New York Life Ins. Co.*, 153 A.D.3d 216, 221 (1st Dep't 2017), *rev'd*, 32 N.Y.3d 1009 (2018). Given that the New York State Labor Relations Act, New York Labor Law § 700, *et seq.* ("SLRA") is patterned after the National Labor Relations Act ("NLRA"), NLRA precedent is generally applicable to the SLRA. *New York State Lab. Rels. Bd. v. Interborough News Co.*, 170 Misc. 347, 348 (Sup. Ct. Spec. Term 1939). As such, the First Department's opinion in *Gold* applies to the SLRA given it's well-reasoned and persuasive, especially because, unlike under federal law, in New York the right to organize comes from the Constitution, making it "a fundamental right" that can only be infringed by statute after applying strict scrutiny. *Hernandez v. State*, 173 A.D.3d 105, 114 (3d Dep't 2019). As such, the *Gold* rule renders Defendants' arbitration agreement unenforceable. This is a determination for the Court – as per the text of the Agreement. Dkt No. 11-2 (Disp. Res. P.) ¶ 6 (PageID #63).

### 1. Class Waivers Are Precluded by New York State Law.

The SLRA grants employees in New York "the right . . . to engage in concerted activities, for the purpose of . . . other mutual aid of protection[.]" N.Y. Lab. L. § 703. An employer commits an unfair labor practice – violating the SLRA – if it does anything to "interfere with, restrain or coerce employees in the exercise of the rights guaranteed by section [703]." *Id.* § 704(10). "[A]n employment-related class or collective action by an individual employee is an attempt to initiate,

to induce, or to prepare for group action and is therefore" one such protected conduct.  *200 E. 81st Rest. Corp*., 362 N.L.R.B. 1238, 1239 (2015); *see also Cordua Rests., Inc*., 368 N.L.R.B. No. 43, slip. op. at * 5 (2019) ("Section 7 [of the NLRA] has long been held to protect employees when they pursue legal claims concertedly. Nothing in the Court's decision in *Epic[]* calls into question this longstanding precedent.").  The First Department in *Gold* held, adopting the reasoning in *Lewis v Epic Sys. Corp*., 823 F3d 1147 (7th Cir 2016), *rev'd, Epic*, 138 S. Ct. 1612, that an agreement to preclude this protected conduct – specifically, a class action – violates the employees' rights to engage in protected concerted activity and is unenforceable.  *Gold*, 153 A.D.3d at 225 (citing *D.R. Horton, Inc*., 357 N.L.R.B. No. 184 (2012) and *Murphy Oil USA, Inc.*, 361 N.L.R.B. No. 72 (2014)).  Because NLRA precedent generally applies to the SLRA, this rule would have applied to the SLRA.  *See Comm. of Interns & Residents v. New York State Lab. Rels. Bd*., 420 F. Supp. 826, 830 (S.D.N.Y. 1976).

### a. *Epic* does not control.

A split Supreme Court held that the NLRA and FAA must be read in harmony to permit arbitrations stemming from agreements with class waivers.  *Epic*, 138 S. Ct. at 1632.  *Epic* does not control this case for three primary reasons:  (1) the NLRA does not apply to this case; (2) *Epic*'s holding, flowing from the conflict between the FAA and the NLRA, is not dispositive; and (3) the FAA is significantly more rigid than the CPLR.

First, the NLRA does not apply to Plaintiff here, as Defendants would concede.  The NLRA only covers workers that satisfy the common-law agency principles of employment.  *Browning-Ferris Indus. of Cal., Inc. v. Nat'l Lab. Rels. Bd.*, 911 F.3d 1195, 1207 (D.C. Cir. 2018) (discussing historical understanding of the NLRA's employee-employer relationship).   By virtue of the Fair Play Act, however, New York applies a broader, more inclusive test that presumes all truckers are employees.  N.Y. Lab. L. § 862-b.  As are result, the NLRA's coverage does not extend to Plaintiff

and the SLRA will govern his labor relations with Defendants. *See New York State Vegetable Growers Ass'n, Inc. v. Cuomo*, No. 19 Civ.1720, 2020 WL 4218009, at *9 (W.D.N.Y. July 23, 2020) (preemptive effect of the NLRA does not preclude the SLRA from extending to the farmworkers because farmworkers are excluded from the definition of employee under the NLRA); *Catholic High Sch. Ass'n of Archdiocese of New York v. Culvert*, 753 F.2d 1161, 1171 (2d Cir. 1985) (same involving parochial school teachers).

Second, in analyzing the potential conflict between the NLRA and FAA, the Supreme Court held the NLRA does not demonstrate a manifest intent of Congress to override the FAA. *Epic*, 138 S. Ct. at 1624-29. The Supreme Court did not hold that it would be an unfair labor practice to require workers to execute an agreement waiving collective arbitration. Rather, the majority determined, looking at the text of the NLRA, Supreme Court precedent, the timing of the NLRA's passage, and the evolution of the NLRB rule barring such arbitration agreements, that the NLRA lacked "clear and manifest congressional command to displace" the FAA and "outlaw" arbitration agreements with class waivers. *Id*. at 1624; *c.f. Corcoran v. John F. Trommer, Inc.*, 203 Misc. 37, 39 (Sup. Ct. 1952) (holding that an agreement to not join a union is "not merely voidable at the employee's option but void" as it violates public policy and the SLRA), *aff'd* 282 A.D. 1041 (1st Dep't 1953); *Ass'n of Plumbing & Heating Contractors of Greater New York v. Merten*, 173 Misc. 448, 454 (N.Y. Mun. Ct. 1940) (contract that violated the SLRA was "null and void"), *aff'd* 261 A.D. 543 (1st Dep't 1941), *aff'd* 288 N.Y. 555 (1942)

Third, the CPLR is not a rigid as the FAA. In *Epic*, the Supreme Court held that assuming, without deciding, the NLRA renders class waivers "illegal," the FAA's saving clause "does not save defenses that target arbitration either by name or by more subtle methods[.]" 138 S. Ct. at 1622. That is, under the FAA, the defense must challenge the underlying contract – not the

19

arbitration clause. *Id.* ("A defense of that kind, *Concepcion* tells us, is one that impermissibly disfavors arbitration whether it sounds in illegality or unconscionability.").

On the other hand, unlike its federal counterpart, the New York arbitration law yields to important public policies. As discussed above, New York's public policies warrant excluding certain claims from arbitration – even though the FAA would compel those claims to arbitration, including antitrust and discrimination claims. *See Epic*, 138 S. Ct. at 1627 (collecting cases).

New York's protection of workers acting in concert exceeds that of the NLRA. As explained in part above, "New York has a strong public policy of protecting its workers, rooted in a 1905 amendment to the state's Constitution." *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 352 (E.D.N.Y. 2011), *vacated in part*, 773 F.3d 394 (2d Cir. 2014). The New York State Constitution is clear on this state's priorities: "Labor of human beings is not a commodity nor an article of commerce and shall never be so considered or construed. . . . Employees shall have the right to organize and to bargain collectively through representatives of their own choosing." N.Y. Const. art. I, § 17. As a result, the Court of Appeals has determined that the right to organize is a fundamental right. *Hernandez*, 173 A.D.3d at 114. The SLRA furthers these state policies, providing that "[i]n the interpretation and application of this article, and otherwise, it is hereby declared to be the public policy of the state . . . to protect employees in the exercise of full freedom of association, self-organization and designation of representatives of their own choosing for the purposes of . . . mutual aid and protection, free from the interference, restraint or coercion of their employers." N.Y. Lab. Law § 700. Given these strong public policies, it is clear that *Epic* does not preclude the Court from applying the reasoning in *Gold* to this action.

      **b.  The Court of Appeals did not undermine *Gold's* persuasiveness.**

The Court of Appeals holding in *Gold II* is limited to two sentences:

> On review of submissions pursuant to section 500.11 of the Rules of the Court of Appeals (22 NYCRR 500.11), order, insofar as appealed from, reversed, without costs, and defendants' motion to compel plaintiff Melek Kartal to arbitrate granted. The parties now agree that the arbitration clauses in Kartal's agreements are enforceable (*see Epic Systems Corp. v Lewis*, 584 US —, 138 S Ct 1612 [2018]), and ask that we reverse.

*Gold II*, 32 N.Y.3d at 1010.  This order offers no precedential value.  To start, the court did not engage in any analysis.  *See Hunt Const. Grp., Inc. v. Brennan Beer Gorman/Architects, P.C.*, 607 F.3d 10, 18 (2d Cir. 2010) ("'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'" (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925))).  Instead, the court simply stated that the parties agreed that *Epic* rendered the agreement enforceable.  The order is, therefore, nonbinding as the court did not resolve an active dispute.  *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J. dissenting) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed.").  And, as discussed above, the rationale for the parties' agreement was *Epic*'s decision on the NLRA and the FAA, which are not at issue here.  As a result, this order is neither controlling nor persuasive.

Gold still weighs heavy on these proceedings, despite its post-*Epic* reversal.  *See In re Okura & Co. (Am.), Inc.*, 249 B.R. 596, 611 n. 10 (Bankr. S.D.N.Y. 2000) ("While it may be true that the act of vacating an opinion diminishes its value as binding precedent, it has no effect on the persuasiveness of the decision.").  Ultimately, *Gold*'s reasoning harmonizes with four Supreme Court justices.  *Compare Gold*, 153 A.D.3d at 225 ("The NLRB itself has also repeatedly concluded that NLRA section 7 forecloses enforcement of arbitration agreements that waive an employee's right to pursue collective legal action in any judicial or arbitral forum. . . . It follows then . . . that waiver of collective claims violates the NLRA, and is void and invalid . . . ."), *with*

*Epic*, 138 S. Ct. at 1612 ("Because I would hold that employees' § 7 rights include the right to pursue collective litigation regarding their wages and hours, I would further hold that the employer-dictated collective-litigation stoppers, i.e., 'waivers,' are unlawful."). This split at the Supreme Court demonstrates that *Epic* is less persuasive. Bryan Garner, <u>The Law of Judicial Precedent</u> 182 (2016). Thus, given New York's strong policies favoring workers' rights, the *Epic* dissent is likely to apply to the SLRA's relationship to the CPLR.

In short, *Gold* is persuasive and should be followed. *Gold* analyzed the split amongst the circuit courts and ultimately decided the Seventh Circuit was correct. *Gold*, 153 A.D.3d at 221-25. It is telling that the First Department deviated from the Second Circuit on this precise issue. *Id.* at 223. The First Department's decision to side with Seventh Circuit, despite the positions taken by the Second, Fifth, and Eighth Circuits, demonstrates that New York law is in line with the *Epic* dissent because the First Department adopted the Seventh Circuit's reasoning while rejecting the reasoning of the circuits that was applied by the majority in *Epic.*

## 2. Declining to enforce a class action waiver not subject to the FAA is consistent with the holdings of other state courts.

A finding that class action waivers in employment agreements are unenforceable under New York law would be consistent with the findings of numerous state courts applying similar legal principles. *See*, *e.g.*, *Waithaka I*, 404 F. Supp. 3d at 348 (where the Court applied Massachusetts Supreme Judicial Court precedent and found that the arbitration agreement was unenforceable under Massachusetts law on public policy grounds), *aff'd*, *Waithaka II*, 966 F.3d at 33 ("Given the fundamental public policy of Massachusetts. . . the [Massachusetts courts] would therefore invalidate a class waiver in an employment contract, like that of Waithaka, not covered by the FAA."); *Machado v. System4 LLC*, 465 Mass. 508, 514 (2013); (with respect "to consumer claims under G.L. c. 93A…appl[ies] equally well to claims by employees under the Wage Act.",

in a case where workers challenged their misclassification as independent contractors); *see also Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 22-45 (2006) ("Because our analysis on the question of class action waivers is applicable to all contracts governed by Illinois law, it can be applied to render the class action waiver in an arbitration clause unenforceable without undermining the goals and policies of the FAA."); *Herron v. Century BMW*, 387 S.C. 525, 536 (2010), *vacated sub nom. Sonic Auto., Inc. v. Watts,* 563 U.S. 971 (2011), *opinion reinstated on remand*, 395 S.C. 461 (2011) (reinstating prior decision, assuming the FAA did not preempt the state laws at issue); *Fiser v. Dell Comput. Corp.*, 144 N.M. 464, 467-71 (2008); *Tillman v. Com. Credit Loans, Inc.*, 362 N.C. 93, 108 (2008); *Scott v. Cingular Wireless*, 160 Wash. 2d 843, 853-60 (2007); *Muhammad v. Cnty. Bank of Rehoboth Beach, Del.*, 189 N.J. 1, 22 (2006); *Wisconsin Auto Title Loans, Inc. v. Jones*, 290 Wis. 2d 514, 553-54 (2006); *Leonard v. Terminix Intern. Co., L.P.*, 854 So. 2d 529, 539 (Ala. 2002); *State ex rel. Dunlap v. Berger*, 211 W. Va. 549, 561-64 (2002); *Vasquez-Lopez v. Beneficial Or., Inc*., 210 Or. App. 553, 569-572 (Or. App. Ct. 2007); *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 879-86 (Pa. Super. Ct. 2006); *Whitney v. Alltel Commc'ns, Inc.*, 173 S.W.3d 30, 309-140 (Mo. App. 2005). Although some of these decisions have been questioned or abrogated by the Supreme Court, the state courts are only bound by these developments where, unlike here, the FAA controls. *See, e.g.*, *CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202, 1212 (D.N.M. 2020) ("While *Concepcion* has put into doubt the continued viability of the specific holding in *Fiser*, the analysis in *Fiser* concerning New Mexico public policy nonetheless indicates that the New Mexico Supreme Court would apply the effective vindication doctrine to cost-sharing arbitration with prohibitively high fees."); *Iskanian v. CLS Tranport. Los Angeles, LLC*, 59 Cal. 4th 348, 360 (2014) (2007 holding that class action waivers were unenforceable was abrogated because the public policy and unconscionability holdings were

"preempted by the FAA"); *Torrence v. Nationwide Budget Fin*., 232 N.C. App. 306, 334 (2014) ("[W]here the FAA governs, state laws (including *Tillman* ) cannot carve out exceptions").

### 3. The class action waiver clause is not severable.

To determine whether a contract is entire or severable, New York courts look to the parties' intent – as deduced from the terms of the contract "and rules of construction governing the ascertainment of that intention." *Garcia v. Gov't Emps. Ins. Co*., 151 A.D.3d 1020, 1027 (2d Dep't 2017) (internal citations and quotations omitted). The lack of a severability clause demonstrates that the contract is "one entire, nonseverable document." *F & K Supply Inc. v. Willowbrook Dev. Co*., 288 A.D.2d 713, 716 (3d Dep't 2001) (trial court correctly held that contract to be nonseverable where the "agreement contains no severability clause"); *see, e.g.*, *Ginett v. Comput. Task Grp., Inc*., 962 F.2d 1085, 1099 (2d Cir. 1992) ("everything in the agreement points to a" indivisible contract where, inter alia, it lacked an "express severability clause"); *Mun. Cap. Appreciation Partners, I, L.P. v. Page*, 181 F. Supp. 2d 379, 395 (S.D.N.Y. 2002) (finding that the lack of severability clause "militates against" severability).

The Agreement does not permit severability – it lacks such a clause. Although one exists in the Driver Agreement, Defendants cannot take advantage of this provision because the Agreement is "a separate document." Dkt. No. 11-2 (Disp. Res. P.) n. 2 (PageID #61); *see also Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13 (1972) (noting that "when two parties have made two separate contracts it is more likely that promises made in one are not conditional on performances required by the other" (internal citations and quotations omitted)). Moreover, the existence of the severance provision the Driver Agreement demonstrates that the arbitration Agreement is an all-or-nothing provision that cannot be excised from the Agreement to maintain

its validity. *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("[A]n provision is severable from the remainder of the contract.").

Lastly, the class action waiver itself precludes severability: "This Class Action Waiver will not be severable from this Agreement in any matter brought as a class or collective action." Dkt. No. 11-2 (Disp. Res. P.) ¶ 6 (PageID #63). As a result, the class action waiver clause cannot be severed from the Agreement – defeating Defendants' entire motion to compel arbitration.

## CONCLUSION

For the reasons above, Plaintiff respectfully asks the Court to deny Defendants' motion.

Dated: Melville, New York
      September 9, 2020

Respectfully submitted,

By:    */s/ Troy L. Kessler*   
     Troy L. Kessler

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermatura.com

Harold Lichten (*Pro hac vice*)
Zach Rubin (*Pro hac vice*)
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
zrubin@llrlaw.com

*Attorneys for Plaintiff and the Putative Class*