UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JOSE CASTRO, on behalf of himself and all others similarly situated,

          Plaintiff,

   v.

TCA LOGISTICS CORP. and, THOMAS ELETTO,

          Defendants.

---

Civil Action No.
2:20-CV-02004(JS)(ARL)

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, COMPEL ARBITRATION

Respectfully submitted,

PHILLIPS LYTLE LLP
Attorneys for Defendants
*TCA Logistics Corp. and Thomas Eletto*
One Canalside
125 Main Street
Buffalo, New York 14203-2887
Telephone No. (716) 847-8400

James D. Donathen
Joanna J. Chen
Marc H. Goldberg
– Of Counsel –

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

POINT I   PLAINTIFF FAILS TO ESTABLISH THAT FAA
          SECTION 1 APPLIES ........................................................................................... 2

POINT II  PLAINTIFF'S CLAIMS ARE ARBITRABLE UNDER
          NEW YORK LAW ................................................................................................. 4

   A.   The Agreement requires that Plaintiff's claims be compelled
        to arbitration ........................................................................................................... 4

   B.   New York public policy supports Defendants' motion to
        compel arbitration .................................................................................................. 5

POINT III THE CLASS ARBITRATION WAIVER IS ENFORCEABLE
          UNDER NEW YORK LAW ................................................................................. 7

CONCLUSION ...................................................................................................................10

## **TABLE OF AUTHORITIES**

Page

**Cases**

*Adams v. Kent Sec. of New York, Inc.*,
    156 A.D.3d 588 (1st Dep't 2017) ................................................................................. 6

*Adams v. Suozzi*,
    433 F.3d 220 (2d Cir. 2005) .......................................................................................... 3

*Aimcee Wholesale Corp. v. Tomar Prods., Inc.*,
    21 N.Y.2d 621 (1968) ................................................................................................... 6

*Allegany Co-op Ins. Co. v. Dimora*,
    669 F. Supp.2d 315 (W.D.N.Y. 2009) .......................................................................... 7

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ...................................................................................................... 9

*Bacashihua v. U.S. Postal Serv.*,
    859 F.2d 402 (6th Cir. 1988) ........................................................................................ 3

*Bissonette v. Lepage Bakeries Park St., LLC*,
    2020 WL 2494763 (D. Conn. May 14, 2020) .............................................................. 2

*Brady v. Williams Capital Grp., L.P.*,
    14 N.Y.3d 459 (2010) ............................................................................................... 4, 5

*Burgos v. Ne. Logistics, Inc.*,
    2017 WL 10187756 (E.D.N.Y. Mar. 30, 2017) .................................................... 4, 5, 9

*Carr v. Transam Trucking, Inc.*,
    2008 WL 1776435 (N.D. Tex. Apr. 14, 2008) ............................................................. 3

*Ciago v. Ameriquest Mortg. Co.*,
    295 F. Supp. 2d 324 (S.D.N.Y. 2003) .......................................................................... 6

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ...................................................................................................... 3

*CMH Homes, Inc. v. Sexton*,
    441 F. Supp. 3d 1202 (D.N.M. 2020) .......................................................................... 9

*Comm. of Interns & Residents v. New York State Labor Relations Bd.*,
    420 F. Supp. 826 (S.D.N.Y. 1976) ............................................................................... 8

*Diaz v. Michigan Logistics Inc.*,
  167 F. Supp. 3d 375 (E.D.N.Y. 2016) .................................................................. 6

*Epic Systems Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ............................................................................... 7, 8, 9

*Flynn v. Labor Ready, Inc.*,
  6 A.D.3d 492 (2d Dep't 2004) ............................................................................ 6

*Gold v. New York Life Insurance Co.*,
  153 A.D.3d 105 (1st Dep't 2017), *rev'd* 32 N.Y.3d 1009 (2018) ......................... 1, 2, 7, 8

*Harden v. Roadway Package Sys., Inc.*,
  249 F.3d 1137 (9th Cir. 2001) ............................................................................ 3

*Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*,
  702 F.3d 954 (7th Cir. 2012) .............................................................................. 3

*Lewis v. Epic Systems Corp.*,
  823 F.3d 1147 (7th Cir. 2016) ............................................................................ 8

*Martins v. Flowers Foods, Inc.*,
  2020 WL 5223772 (M.D. Fla. Mar. 12, 2020) ..................................................... 3

*Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*,
  107 F.3d 979 (2d Cir. 1997) ............................................................................... 3

*Michel v. Parts Auth., Inc.*,
  2016 WL 5372797 (E.D.N.Y. Sept. 26, 2016) .................................................... 6

*New York State Labor Relations Bd. v. Timen*,
  264 A.D. 120 (1st Dep't 1942) ........................................................................... 8

*O'Dean v. Tropicana Cruises, Int'l, Inc.*,
  1999 WL 335381 (S.D.N.Y. May 25, 1999) ....................................................... 4

*In re Park East Corp. v. Whalen*,
  43 N.Y.2d 735 (1977) ......................................................................................... 7

*Ranieri v. Bell Atl. Mobile*,
  304 A.D.2d 353 (1st Dep't 2003) ....................................................................... 9

*Rittmann v. Amazon.com, Inc.*,
  971 F.3d 904 (9th Cir. Aug. 19, 2020) ............................................................... 3

*Seven-Up/RC Bottling Co. of S. Cal. v. Amalgamated Indus. Workers Union*,
  183 F. App'x 643 (9th Cir. 2006) ....................................................................... 3

*Siller v. L & F Distribs., Ltd.*,
   109 F.3d 765 (5th Cir. 1997) ............................................................................................ 3

*Singh v. Uber Techs. Inc.*,
   939 F.3d 210 (3d Cir. 2019) ............................................................................................ 3

*Smith v. Allstate Power Vac. Inc.*,
   2020 WL 5086584 (E.D.N.Y. Aug. 26, 2020) ................................................................ 3

*Towley v. King Arthur Rings, Inc.*,
   40 N.Y.2d 129 (1976) ...................................................................................................... 7

*Tsoflias v. Barclays Capital Inc.*,
   2018 WL 2971165 (Sup. Ct. N. Y. Cty. June 13, 2018) ................................................. 9

*Valdes v. Swift Transp. Co., Inc.*
   292 F. Supp.2d 524 (S.D.N.Y. 2003) .............................................................................. 4

*Waithaka v. Amazon.com, Inc.*,
   404 F. Supp. 3d 335 (D. Mass. 2019), *aff'd*, 966 F.3d 10 (1st Cir. 2020) ................. 3, 9

*Ward v. Express Messenger Sys. Inc.*,
   413 F. Supp. 3d 1079 (D. Colo. 2019) ............................................................................ 3

*Wertheim & Co. v. Halpert*,
   48 N.Y.2d 681 (1979), *abrogated in part by Fletcher v. Kidder, Peabody & Co.*,
   81 N.Y.2d 623 (1993) ...................................................................................................... 6

*Westinghouse Elec. Corp. v. New York City Transit Auth.*,
   82 N.Y.2d 47 (1993) ..................................................................................................... 4, 5

*Zambrano v. Strategic Delivery Sols., LLC*,
   2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016) ............................................................. 5, 6

**Statutes**

Federal Arbtration Act 9 U.S.C. §§ 1-14 ................................................................. 1, 2, 3, 4

N.Y. Lab. Law § 663 ............................................................................................................ 6

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 2, 10

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 2

## PRELIMINARY STATEMENT

Plaintiff Jose Castro's opposition to Defendants' motion to dismiss or compel arbitration is unsuccessful because it is based upon misapprehensions of the law and mistaken interpretations of the agreement between the parties ("Agreement").

Plaintiff fails to establish that he should be considered a "transportation worker," and therefore exempt from the Federal Arbitration Act ("FAA") under FAA Section 1. Specifically, Plaintiff's opposition fails to address that he is primarily compensated for his non-transportation services, and notably, does not even allege that he holds a commercial drivers' license, which is required to operate most commercial vehicles. The Court therefore should hold that the FAA applies to compel Plaintiff's claims to arbitration.

Plaintiff, however, argues that because FAA Section 1 applies, the Agreement's saving clause renders the Agreement's arbitration provision entirely unenforceable. Plaintiff's strained interpretation of the Agreement contradicts the language of the Agreement itself, and decisions from this Court holding that the inapplicability of the FAA does not render an Agreement unenforceable.

Plaintiff's opposition also devotes significant attention to generalized public policy arguments against the arbitration of New York Labor Law ("NYLL") claims. Plaintiff's arguments, however, are unsupported by New York court decisions or legislative history.

Plaintiff also argues that the Appellate Division, First Department's decision in *Gold v. New York Life Insurance Co.*, 153 A.D.3d 216 (1st Dep't 2017), should render the Agreement's class arbitration waiver unenforceable, even though the First Department's decision was unanimously reversed by the New York Court of Appeals. *Gold v. New York*

*Life Ins. Co.*, 32 N.Y.3d 1009 (2018).  Plaintiff's argument, among other things, ignores well-established rules of New York appellate practice, which render reversed decisions a nullity.

Plaintiff's complaint therefore should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6), or, in the alternative, arbitration on an individual basis should be compelled and the complaint dismissed in connection therewith.

## ARGUMENT

## POINT I

### PLAINTIFF FAILS TO ESTABLISH THAT FAA SECTION 1 APPLIES

Plaintiff's arguments concerning whether Section 1 of the FAA applies fail to address several critical aspects that differentiate Plaintiff from conventional truck drivers.  First, a significant aspect of Plaintiff's job responsibilities includes installing furniture in a customer's residence or place of business and performing various "white glove" service tasks, including repairing old furniture.  Dkt. 11-1 ("Eletto Decl.") ¶¶ 5-6, 9.  Contrary to Plaintiff's cursory assertions that his "primary duties consisted of driving a truck," Dkt. 14-2 ("Castro Decl."), Plaintiff's compensation in fact was dependent upon customer ratings for the services Plaintiff performed, which are unrelated to Plaintiff's truck driving responsibilities.  Eletto Decl. ¶¶ 6-8.  The furniture installation and repair services that Plaintiff provided were so important that TCA hired Plaintiff for these skills, and TCA does not require its contractors to maintain a commercial driver's license ("CDL").  *Id.* ¶ 9.  Notably, Plaintiff does not and cannot allege that he maintains a commercial driver's license, *see* Castro Decl., which is required to operate a commercial motor vehicle.

Based upon the foregoing, Plaintiff is more analogous to the plaintiffs in *Bissonette v. Lepage Bakeries Park St., LLC,* 2020 WL 2494763, at *5 (D. Conn. May 14, 2020), than *Smith*

*v. Allstate Power Vac, Inc.,* 2020 WL 5086584, at *5 (E.D.N.Y. Aug. 26, 2020), wherein the plaintiff truck driver's transportation activities were a "fundamental, not merely incidental, aspect of her job." *Smith*, 2020 WL 5086584, at *5. Similarly, the plaintiffs in *Martins v. Flowers Foods, Inc.,* 2020 WL 5223772, at *4 (M.D. Fla. Mar. 12, 2020), were distributors whose "primary duty" was to transport goods in interstate commerce.

The cases from other circuits that Plaintiff relies upon also are distinguishable. For example, the cases do not concern nor address transportation workers (i) whose compensation was primarily based upon services unrelated to transportation; and (ii) who were not required to maintain a CDL. *See e.g., Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137 (9th Cir. 2001); *Ward v. Express Messenger Sys. Inc.,* 413 F. Supp. 3d 1079 (D. Colo. 2019); *Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC,* 702 F.3d 954 (7th Cir. 2012); *Siller v. L & F Distribs., Ltd.,* 109 F.3d 765 (5th Cir. 1997); *Carr v. Transam Trucking, Inc.,* 2008 WL 1776435, at *2 (N.D. Tex. Apr. 14, 2008); *Bacashihua v. U.S. Postal Serv.,* 859 F.2d 402 (6th Cir. 1988); *Seven-Up/RC Bottling Co. of S. Cal. v. Amalgamated Indus. Workers Union,* 183 F. App'x 643 (9th Cir. 2006). In relying upon recent circuit-level precedent that have adopted a broad interpretation of FAA Section 1, *see e.g., Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335 (D. Mass. 2019), *aff'd*, 966 F.3d 10 (1st Cir. 2020); *Rittmann v. Amazon.com, Inc.,* 971 F.3d 904, 921 (9th Cir. 2020); *Singh v. Uber Techs. Inc.,* 939 F.3d 210, 221-22 (3d Cir. 2019), Plaintiff also ignores the Second Circuit's position that FAA Section 1 should be read narrowly. *Adams v. Suozzi,* 433 F.3d 220, 226 n. 5 (2d Cir. 2005) (citing *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 982 (2d Cir. 1997)); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 106 (2001) ("the FAA's purpose of overcoming judicial hostility to arbitration further compel[s] that the § 1

- 3 -

exclusion be afforded a narrow construction"). Based upon the foregoing, Defendants urge the Court to compel Plaintiff's claims to arbitration under the FAA.

## POINT II

### PLAINTIFF'S CLAIMS ARE ARBITRABLE UNDER NEW YORK LAW

If FAA Section 1 applies to Plaintiff (it does not), Plaintiff concedes that New York law should apply to determine whether Plaintiff's claims are arbitrable. Dkt. 14 at 6. New York has a "strong state policy favoring arbitration agreements." *Brady v. Williams Capital Grp., L.P.,* 14 N.Y.3d 459, 467 (2010); *Westinghouse Elec. Corp. v. New York City Transit Auth.,* 82 N.Y.2d 47, 53 (1993) ("It is firmly established that the public policy of New York State favors and encourages arbitration and alternative dispute resolutions."). As explained below, Plaintiff's claims should be compelled to arbitration under New York law.

**A.      The Agreement requires that Plaintiff's claims be compelled to arbitration**

Plaintiff incorrectly contends that because FAA Section 1 applies, the saving clause of the Agreement, which states "[t]his Agreement does not apply to any claim that may not be arbitrated as provided by an Act of Congress or lawful, enforceable Executive Order," Dkt. 11-2 ("Agreement") at 12, precludes arbitration of Plaintiff's claims.

Plaintiff's argument is directly contradicted by numerous decisions recognizing that where FAA Section 1 applies, this means only that "the particular enforcement mechanisms of the FAA are not available." *O'Dean v. Tropicana Cruises, Int'l, Inc.*, 1999 WL 335381, at *1 (S.D.N.Y. May 25, 1999); *see also Burgos v. Ne. Logistics, Inc.*, 2017 WL 10187756, at *4 (E.D.N.Y. Mar. 30, 2017) ("the inapplicability of the FAA does not render a parties' agreement to arbitrate unenforceable"); *Valdes v. Swift Transp. Co., Inc.* 292 F. Supp.2d 524, 529 (S.D.N.Y. 2003) ("Section 1 [of the FAA] does not . . . in any way address the

enforceability of employment contracts exempt from the FAA. It simply excludes these contracts from FAA coverage entirely."). Thus, even if FAA Section 1 is found to apply, Plaintiff's claims should not be construed as being barred from arbitration "by an Act of Congress," and subject to the Agreement's saving clause.

Plaintiff's strained interpretation of the Agreement also conflicts with the Agreement's broad arbitration provision, which encompasses Plaintiff's claims. The Agreement provides that *"[a]ny claim, dispute or controversy relating to or arising out of this agreement* shall be settled in accordance with the dispute resolution procedure . . . set forth in Exhibit B attached hereto and incorporated herein by reference." Dkt. 11-2 at 8 (emphasis added). The Dispute Resolution Procedure of the Agreement further provides that the parties agree to "submit Covered Claims . . . that may arise between [the parties] . . . to binding arbitration." *Id.* at 11-12. "Covered Claims" is broadly defined to include "any legal dispute that . . . [Plaintiff] . . . may have against: (1) [TCA]." *Id.*

Finally, to the extent there is any ambiguity regarding the applicability of the Agreement's saving clause, such ambiguity should be construed in favor of arbitrability in light of New York's "strong state policy favoring arbitration agreements." *Brady*, 14 N.Y.3d at 467; *Westinghouse,* 82 N.Y.2d at 47. Because the plain language of the Agreement requires arbitration of Plaintiff's claims, Defendants' motion to compel arbitration should be granted.

**B.     New York public policy supports Defendants' motion to compel arbitration**

Plaintiff contends that his NYLL claims should not be arbitrated as a matter of public policy, yet Plaintiff cannot identify a single federal or state court in New York that has agreed with Plaintiff. Indeed, the federal courts in New York routinely apply New York

law to compel arbitration of NYLL claims. *See, e.g., Burgos,* 2017 WL 10187756, at *4; *Zambrano v. Strategic Delivery Sols., LLC*, 2016 WL 5339552, at *9 (S.D.N.Y. Sept. 22, 2016); *Diaz v. Michigan Logistics Inc.,* 167 F. Supp.3d 375, 380 (E.D.N.Y. 2016); *Michel v. Parts Auth., Inc.*, 2016 WL 5372797, at *4 (E.D.N.Y. Sept. 26, 2016). New York state courts have also stated that "[a]s a general matter . . . a clear and unmistakable agreement to arbitrate statutory wage claims is not unenforceable as against public policy." *See e.g., Adams v. Kent Sec. of New York, Inc.*, 156 A.D.3d 588, 589 (1st Dep't 2017) (addressing concerns about plaintiff's financial ability to arbitrate, which are not in issue here); *Flynn v. Labor Ready, Inc.*, 6 A.D.3d 492, 492 (2d Dep't 2004) (plaintiffs properly compelled to arbitrate NYLL claims).

In an attempt to counter this significant precedent, Plaintiff relies upon two dated New York Court of Appeals decisions, *see Wertheim & Co. v. Halpert,* 48 N.Y.2d 681 (1979), *abrogated in part by Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623 (1993); *Aimcee Wholesale Corp. v. Tomar Prods., Inc.*, 21 N.Y.2d 621 (1968), neither of which concern NYLL nor wage claims. As noted by the U.S. District Court for the Southern District of New York in *Zambrano*, the viability of *Wertheim* and *Aimcee* is questionable in light of the numerous developments in arbitration law since they were decided. *Zambrano*, 2016 WL 5339552, at *9 (rejecting public policy argument and compelling NYLL claims to arbitration).

Similarly, Plaintiff does not and cannot identify any provision of NYLL that would prohibit arbitration of NYLL claims. Although Plaintiff discusses at length the legislative purpose behind NYLL, there is no indication that the New York State Legislature intended to preclude arbitration of NYLL claims. *See Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 334 (S.D.N.Y. 2003) "[n]othing in New York Labor Law section 663 . . . indicate[s]

that the state legislature intended to preclude compulsory arbitration of claims under . . . [that] provision[]"). Plaintiff therefore cannot rely upon public policy to argue that his NYLL claims should not be compelled to arbitration.

## POINT III

### THE CLASS ARBITRATION WAIVER IS ENFORCEABLE UNDER NEW YORK LAW

In attempting to argue that New York law renders the Agreement's class arbitration waiver unenforceable, Plaintiff ignores binding and applicable precedent. It is axiomatic that "[a]s a matter of New York appellate practice, the effect of a reversal of an Appellate Division decision by the New York Court of Appeals is to not only vacate that lower court determination but '*to erase the whole case from the books*.'" *Allegany Co-op Ins. Co. v. Dimora*, 669 F. Supp. 2d 315, 320 (W.D.N.Y. 2009) (quoting *Park East Corp. v. Whalen*, 43 N.Y.2d 735, 736 (1977)) (emphasis added). Plaintiff here relies primarily upon the First Department's decision in *Gold v. New York Life Insurance Co.*, 153 A.D.3d 216, 221 (1st Dep't 2017), which was unanimously reversed by the New York Court of Appeals, 32 N.Y.3d 1009 (2018). Thus, notwithstanding Plaintiff's extended analysis of why the First Department's decision in *Gold* should still be persuasive, the New York Court of Appeals' reversal renders the First Department's decision a nullity. Plaintiff's attempt to undermine the New York Court of Appeals' decision because of its brevity also should be disregarded, as ultimately "it is only what a court adjudicates, not what it says in an opinion, that has any direct legal effect." *Towley v. King Arthur Rings, Inc.*, 40 N.Y.2d 129, 132-33 (1976). Based solely upon the foregoing, the Agreement's class arbitration waiver should be enforceable under New York law.

Although Plaintiff argues otherwise, the U.S. Supreme Court's decision in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), provides further support for the enforceability of the Agreement's class arbitration waiver. As Plaintiff himself notes, Dkt. 14 at 31, the First Department's decision in *Gold* relied on the Seventh Circuit's reasoning in *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016), which was subsequently reversed by the U.S. Supreme Court. *Epic*, 138 S. Ct. at 1619. The First Department's rationale in *Gold* therefore has been rejected not only by the New York Court of Appeals, but also by the U.S. Supreme Court.

Plaintiff's attempt to distinguish *Epic* by drawing a distinction between the State Labor Relations Act ("SLRA") and the National Labor Relations Act ("NLRA") also fails, as New York has repeatedly recognized that the SLRA is "patterned after" the NLRA. *Comm. of Interns & Residents v. New York State Labor Relations Bd.*, 420 F. Supp. 826, 830 (S.D.N.Y. 1976) ("Since the New York State Labor Relations Act is patterned after the National Labor Relations Act . . . the decisions on the national act are clearly apposite in cases involving the state statute."); *New York State Labor Relations Bd. v. Timen*, 264 A.D. 120, 122 (1st Dep't 1942) ("The provisions of the Labor Law involved are substantially similar to the Federal National Labor Relations Act . . . and in the interpretation of the State act, therefore, the Federal precedents are entitled to great weight."). Plaintiff therefore has no basis for arguing that *Epic* and its rationale should not apply to this case.

Notably, Plaintiff does not and cannot cite to a single New York state court case supporting his position. This is because since *Epic*, New York courts have recognized that class arbitration waivers are enforceable:

> Here, as in both *Gold* and *Epic Systems*, plaintiff opposes the
> motion to compel arbitration, relying on the defense that

> arbitration provisions that waive class and collective actions are illegal. [Plaintiff] . . . does not otherwise raise fraud, duress, or unconscionability as a defense. Because the United States Supreme Court has now resolved plaintiff's only defense to compelling arbitration, plaintiff's opposition is unavailing.

*Tsoflias v. Barclays Capital Inc.*, 2018 WL 2971165, at *2 (Sup. Ct. N. Y. Cty. June 13, 2018); *see also Burgos,* 2017 WL 10187756, at *4-5 (holding class action waiver in arbitration agreement enforceable under both FAA and New York law); *Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 354 (1st Dep't 2003) (citations omitted) ("[G]iven the strong public policy favoring arbitration and the absence of a commensurate policy favoring class actions, we are in accord with authorities holding that a contractual proscription against class actions, such as contained in the Agreements, is neither unconscionable nor violative of public policy.").

    In lieu of New York precedent, Plaintiff relies upon a string of out-of-state cases, the vast majority of which were decided prior to *Epic*, and which Plaintiff himself admits have been questioned or outright abrogated. Dkt. 14 at 35-36. The limited number of cases decided after *Epic* are distinguishable. For example, the First Circuit's decision in *Waithaka*, 966 F.3d at 33, was based in part upon Massachusetts wage and hour statutes granting plaintiffs the right to proceed as a class. *Id.* Plaintiff does not and cannot identify any analogous New York statutory provision here. Plaintiff also relies upon *CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202, 1212 (D.N.M. 2020), which in fact recognized that the U.S. Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011), called into question New Mexico Supreme Court' prior decision holding that class arbitration waivers were unenforceable in the context of small consumer claims. *Id.* Plaintiff therefore has not and cannot identify any binding or persuasive authority to support a finding that the Agreement's class arbitration waiver is unenforceable.

Finally, assuming *arguendo* the class arbitration waiver provision of the Agreement is unenforceable (it is not), the Agreement remains enforceable. The Agreement states "[i]f one or more of the provisions in this Agreement are deemed . . . unenforceable, then the remaining provisions will continue in full force and effect." Agreement ¶ 23. The Dispute Resolution Procedure is expressly incorporated into and should be construed as part of the Agreement: "the dispute resolution procedure . . . set forth in Exhibit B [is] attached hereto and incorporated herein by reference." Agreement ¶ 22. The Agreement and its arbitration provision therefore can be enforced, even if the class arbitration waiver is found to be unenforceable.

## CONCLUSION

For the reasons set forth in Defendants' main brief and based upon the foregoing, the complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6), or, in the alternative, Plaintiff's claims should be compelled to arbitration on an individual basis and the complaint dismissed in connection therewith.

Dated:  Buffalo, New York
         September 28, 2020

PHILLIPS LYTLE LLP

By: /s/ Joanna J. Chen
    James D. Donathen
    Joanna J. Chen
    Marc H. Goldberg
Attorneys for Defendants
*TCA Logistics Corp. and Thomas Eletto*
One Canalside
125 Main Street
Buffalo, New York 14203-2887
Telephone No. (716) 847-8400
jdonathen@phillipslytle.com
jchen@phillipslytle.com
mgoldberg@phillipslytle.com

Doc #4644856