UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JOSE CASTRO, on behalf of himself and
all others similarly situated,

                        Plaintiff,

                                            MEMORANDUM & ORDER
            -against-                       20-CV-2004(JS)(ARL)

TCA LOGISTICS CORP. and THOMAS ELETTO,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Garrett D. Kaske, Esq.
                    Troy L. Kessler, Esq.
                    Kessler Matura P.C.
                    534 Broadhollow Road, Suite 275
                    Melville, New York 11747

                    Harold L. Lichten, Esq., pro hac vice
                    Zachary L. Rubin, Esq., pro hac vice
                    Lichten & Liss-Riordan P.C.
                    729 Boylston Street, Suite 2000
                    Boston, Massachusetts 02116

For Defendants:     James D. Donathen, Esq.
                    Joanna J. Chen, Esq.
                    Marc H. Goldberg, Esq.
                    Phillips Lytle LLP
                    One Canalside
                    125 Main Street
                    Buffalo, New York 14203

SEYBERT, District Judge:

        Plaintiff Jose Castro ("Plaintiff"), individually and on

behalf of others similarly situated, commenced this proposed class

action against Defendants TCA Logistics Corp. ("TCA") and Thomas

Eletto ("Eletto," and together with TCA, "Defendants"), alleging

violations of New York Labor Law ("NYLL") § 862, et seq. (Compl.,

ECF No. 1.)  Before the Court is Defendants' motion to dismiss or, in the alternative, compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and an agreement between the parties.  (Mot., ECF No. 11; Defs. Br., ECF No. 11-3; Reply, ECF No. 15.)  Plaintiff opposes the motion.  (Pl. Opp., ECF No. 14.)  For the reasons that follow, Defendants' motion to compel arbitration is GRANTED and this matter is STAYED.

BACKGROUND AND PROCEDURAL HISTORY[1]

I.   The Parties

Eletto is the founder and President of TCA, a "final mile and white glove delivery and installation" company that has operations from Boston, Massachusetts to Miami, Florida.  (Eletto Decl. ¶ 1.)  From approximately 2015 to April 2019, Plaintiff delivered mattresses and related goods to TCA's clients.  (Compl. ¶¶ 5, 35; Castro Decl., Ex. 1 to Kessler Decl., ECF No. 14-2, at ¶ 3.)  Specifically, TCA assigned Plaintiff delivery routes such that Plaintiff would load his truck at TCA's warehouse in Hicksville, New York and deliver goods to locations in Connecticut or within New York.  (Castro Decl. ¶¶ 6-8.)  According to Defendants, in addition to delivering mattresses, delivery

---

[1] The facts are drawn from the Complaint and the parties' submissions, including the declarations and exhibits attached thereto.  (See Compl.; Declaration of Thomas Eletto ("Eletto Decl."), ECF No. 11-1; Declaration of Troy L. Kessler ("Kessler Decl."), ECF No. 14-1.)

2

drivers, such as Plaintiff, "assist the customer with any additional tasks needed, including furniture moving or repair." (Eletto Decl. ¶ 6; id. ¶ 5 (Eletto attesting that "[f]urniture manufactured outside the state of New York are delivered to warehouses in New York, and the independent contractors' main responsibilities include transporting the furniture from the warehouses to a customer's home or place of business, installing the furniture, and removing old furniture and garbage.").) Customers were asked to rate the delivery services and those ratings "significantly impact the compensation that [Plaintiff, for example,] receives. [Plaintiff] is not simply compensated, for example, based upon the number of trips completed." (Id. ¶¶ 7-8.)

II.  The Agreement and Dispute Resolution Procedure

On or around February 15, 2017, Plaintiff and TCA entered into a contract titled "Independent Driver Agreement" (the "Agreement").[2] (Compl. ¶ 36; Agreement, Eletto Decl., Ex. A, ECF No. 11-2.)  The Agreement states that:

---

[2] Plaintiff executed the Agreement on behalf of "Fernando Delivery Service". (Agreement at 1.)  Here, as in Bissonette v. Lepage Bakeries Park St., LLC, neither party draws "a distinction between the Plaintiff[] and [his] respective compan[y] and neither has argued that the distinction has any bearing on the issues to be decided. . . ."  460 F. Supp. 3d 191, 194 n.2 (D. Conn. 2020). However, in New Prime Inc. v. Oliveira, 139 S. Ct. 532 (2019), the Supreme Court "held that a contract between a trucking company and an independent contractor employee was a 'contract of employment' within the meaning of the FAA without acknowledging that the

**2. Services:** You agree that, on a non-exclusive basis, we may from time to time request your services to transport and deliver our merchandise to our customers; however, we have no obligation to request and you have no obligation to provide any such services. For the purpose of this agreement, "nonexclusive" means that although you may use your vehicle and/or Personnel to perform deliveries for companies other than TCA, you agree that while performing deliveries for TCA you will not carry merchandise for any other business until you have finished the delivery manifest given to you by TCA. Upon our request you agree to provide competent, trustworthy, professional services using the highest standard of care, using your own appropriate independent skill and judgment. . . .

**3. Independent Contractor:** You agree that you are an independent contractor and are not an employee, servant, partner or joint venturer of TCA. You agree and have advised your Personnel that you and your Personnel are not employee(s) of TCA and are not entitled to (and hereby waive any claim) to any benefits provided by TCA, or by operation of law, to TCA employees, including, but not limited to, group insurance, liability insurance, disability insurance, paid vacations, sick leave or other leave, retirement plans, health plans, premium "overtime" pay and the like. . . . You acknowledge that this undertaking on your behalf is a material inducement to us to enter into this Agreement with you.

Under the Agreement, Plaintiff also agreed to arbitrate all disputes with TCA, including any dispute regarding Plaintiff's relationship with TCA. As relevant here, the Agreement provides:

---

contract was actually with the independent contractor's LLC . . ." <u>Bissonette</u>, 460 F. Supp. 3d at 194 n.2. This Court follows suit and treats the contract as one between Plaintiff and TCA.

4

This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws principles. Any claim, dispute or controversy relating to or arising out of this Agreement shall be settled in accordance with the dispute resolution procedure (the "[Dispute Resolution] Procedure") set forth in Exhibit B attached hereto and incorporated herein by reference.

(Agreement ¶ 22; Dispute Resolution Procedure, Exhibit B to Agreement, ECF No. 11-12, at ECF pp. 11-14 (containing covenants 1 through 9).) The Dispute Resolution Procedure continues that:

1. . . . . ALL DISPUTES COVERED BY THIS AGREEMENT WILL BE DECIDED BY AN ARBITRATOR THROUGH ARBITRATION AND NOT BY WAY OF COURT OR JURY TRIAL.

***

3. **COVERED CLAIMS.** This Agreement is intended to be as broad as legally permissible and to apply to the resolution of past, present and future legal disputes that otherwise would be resolved in a court of law or before a forum other than arbitration[]. Except as it otherwise provides, this Agreement applies mutually to any legal dispute that the Company may have against You or that You may have against: (1) the Company; (2) its officers, directors, principals, shareholders, members, owners, employees, or agents; and (3) and all successors and assigns of any of them. Except as it otherwise provides, this Agreement applies to any disputes arising out of or related to Contractor's performance of services for the Company and/or under the Driver Agreement and/or Contractor's relationship with the Company. Except as it otherwise provides, this Agreement covers, without limitation, claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Fair Credit Reporting Act, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave

> Act, the Fair Labor Standards Act, the
> Pregnancy Discrimination Act, the Equal Pay
> Act, the Genetic Information Non-
> Discrimination Act, each as amended, any
> similar state laws and all other federal or
> state legal claims arising out of or relating
> to Contractor's performance of services for
> the Company and/or under the Driver Agreement.
>            \*\*\*
> 6. **CLASS ACTION WAIVER.** [The Parties] agree
> to bring any dispute in arbitration on an
> individual basis only, and not as a class or
> collective action. . . .

(Dispute Resolution Procedure ¶¶ 1, 3 (footnote omitted), 6.)

III. <u>This Action</u>

In the Complaint, Plaintiff alleges, <u>inter alia</u>, that Defendants: improperly classified him as an independent contractor and did not pay him overtime and minimum wages; failed to reasonably reimburse expenses; unlawfully deducted from Plaintiff's wages; and failed to provide wage notices and wage statements in violation of the NYLL. (<u>See generally</u> Compl.)

DISCUSSION

I. <u>Legal Standard</u>

When analyzing a motion to compel arbitration, the Court applies "a standard similar to that applicable for a motion for summary judgment." <u>Meyer v. Uber Techs., Inc.</u>, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citation omitted). Under the summary judgment standard, the court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories,

6

and admissions on file, together with . . . affidavits, and draws all reasonable inferences in favor of the non-moving party."  Id. (internal quotation marks and citations omitted).  "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [courts] may rule on the basis of that legal issue and avoid the need for further court proceedings." Id. (internal quotation marks omitted).

II.  Analysis

Defendants move to dismiss this action, or, in the alternative, compel arbitration, arguing that both the FAA and New York law require enforcement of the Agreement's arbitration provision.  Plaintiff opposes the motion and argues that the arbitration provision is unenforceable because (1) Plaintiff is exempt from the FAA (Pl. Opp. at 2-6); (2) New York law is an "inadequate vehicle to compel this matter to arbitration" (id. at 6-17); and (3) the class action waiver in the arbitration provision renders the entire agreement unenforceable (id. at 17-25).  The Court addresses each argument in turn.

A. The Court Will Compel Arbitration under New York Law

For the reasons that follow, the Court concludes that Plaintiff belongs to a "class of workers engaged in . . . interstate commerce," 9 U.S.C. § 1, such that the FAA does not

provide a basis to compel arbitration.  However, New York law
provides an alternate avenue to compel arbitration.

        1.   <u>Plaintiff is Exempt from FAA Coverage</u>

        Section 2 of the FAA, "the 'primary substantive
provision of the Act,' . . . declares that an arbitration clause
in any 'contract evidencing a transaction involving commerce . .
. shall be valid, irrevocable, and enforceable.'" <u>Islam v. Lyft,
Inc.</u>, No. 20-CV-3004, 2021 WL 871417, at *2 (S.D.N.Y. Mar. 9, 2021)
(first quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>,
460 U.S. 1, 24 (1983); then quoting 9 U.S.C. § 2).  Section 1 of
the FAA, however, carves out an exemption from the Act's coverage
for "contracts of employment of seamen, railroad employees, or any
other class of workers engaged in foreign or interstate commerce."
9 U.S.C. § 1.  "This exception specifically enumerates two classes
of exempt workers who cannot be compelled to arbitrate under the
FAA –– maritime and railroad employees –– while including the
'residual category' of classes of workers engaged in foreign or
interstate commerce." <u>Islam</u>, 2021 WL 871417, at *2 (citation
omitted).  "The Supreme Court has interpreted the residuary
exemption to exempt from the FAA 'contracts of employment of
transportation workers,' . . . and lower courts interpreting 9
U.S.C. § 1 have found that truck drivers engaged in interstate
transportation of goods constitute transportation workers under
Section 1." <u>Smith v. Allstate Power Vac, Inc.</u>, 482 F. Supp. 3d

40, 44-45 (E.D.N.Y. 2020) (first quoting <u>Circuit City Stores, Inc.</u> <u>v. Adams</u>, 532 U.S. 105, 119 (2001); then citing <u>Kowalewski v.</u> <u>Samandarov</u>, 590 F. Supp. 2d 477, 482-83 (S.D.N.Y. 2008)). Recently, the Supreme Court clarified that "the Section 1 exemption does not apply exclusively to contracts of 'employees,' but rather to 'agreements to perform work,' including those of independent contractors." <u>Waithaka v. Amazon.com, Inc.</u>, 966 F.3d 10, 17 (1st Cir. 2020) (quoting <u>New Prime Inc. v. Oliveira</u>, 139 S. Ct. 532, 544 (2019)); <u>accord</u> <u>Bissonette v. Lepage Bakeries Park St., LLC</u>, 460 F. Supp. 3d 191, 197-98 (D. Conn. 2020).

Against this backdrop, the parties dispute whether Plaintiff is a transportation worker, <u>i.e.</u>, whether he belongs to a class of workers "engaged in interstate commerce" and is exempt from the FAA pursuant to Section 1.[3]   Defendants argue that Plaintiff is not a transportation worker because his "responsibilities under the [ ] Agreement are much broader than the mere transportation of goods[.]" (Eletto Decl. ¶ 12; Defs. Br. at 7-9 (arguing that Plaintiff is not a transportation worker because Plaintiff is required to maintain motor vehicle liability and workers' compensation insurances, among other policies, and his responsibilities can be delegated to personnel and include

---

[3] The parties do not dispute that the Agreement is a "contract of employment" and that the Agreement "evidences transactions involving interstate commerce." (<u>See, e.g.</u>, Def. Br. at 6-7.)

furniture installation, removal, and repair, and garbage removal).)  Plaintiff responds that he is "precisely the class of workers that falls within the exemption" because he "operates a truck delivering commercial products within the flow of interstate commerce."  (Pl. Opp. at 4 (emphasis in original).)

Based upon a review of the submissions, the Court finds that Plaintiff "was fundamentally involved in the interstate movement of goods, and therefore []he was a transportation worker exempted by Section 1."  Smith, 482 F. Supp. 3d at 47.  Here, "the relevant inquiry is whether the 'interstate movement of goods is a central part of the class members' job description.'"  Islam, 2021 WL 871417, at *2 (cleaned up) (quoting Wallace v. Grubhub Holdings, Inc., 970 F.3d 798, 801 (7th Cir. 2020)).  When reviewing the Agreement, there can be no doubt that the "interstate movement of goods is a central part of" Plaintiff's job:  the "Services" he agreed to provide unequivocally refer to the transportation and delivery of TCA's merchandise to customers.  (See Agreement ¶ 2; see, e.g., id. ¶ 5 (requiring Plaintiff "to be bonded prior to performing transport or delivery services for TCA" (emphasis added); id. ¶ 6 (requiring Plaintiff to provide TCA "with a copy of the driver's license for all Personnel, and motor vehicle registration(s) and insurance card(s) for any and all vehicles that you use to perform transport and/or delivery services for TCA . . . .  Personnel cannot perform deliveries for TCA without TCA

consent. . . .   If at any point TCA decides that any of Your Personnel should not continue to provide delivery services for TCA, TCA may request removal of the individual from performing TCA deliveries." (emphasis added).)   Moreover, there is no dispute that Plaintiff personally drove a truck containing Defendants' goods across state lines. (Castro Decl. ¶¶ 4-7.)   Thus, "there is no justification in the text of Section 1 to exclude plaintiff from the residuary exemption." Smith, 482 F. Supp. 3d at 47.

Defendants cite to Bissonette to argue that the Agreement evidences a "much broader scope of responsibility that belies the claim that [Plaintiff is] only or even principally [a] truck driver[]."  460 F. Supp. 3d at 199; (see Defs. Br. at 8-9.) It is true that the Agreement here, like those in Bissonette, contemplates the delegation of delivery work and requires Plaintiff to obtain certain insurance policies.[4]  (Defs. Br. at 9;

---

[4] The Court queries whether these facts are relevant to the argument that Plaintiff is not a transportation worker where, as here, Plaintiff commenced this action on behalf of a class of workers who "personally delivered" Defendants' products, and not in his capacity as the "Independent Owner/Trucking Company" that contracted with TCA. (See Compl. ¶ 60 (Plaintiff commenced this action on behalf of himself and "all individuals who . . . personally delivered TCA's clients' products." (emphasis added)); id. ¶¶ 1, 5, 35-36); see Islam, 2021 WL 871417, at *3 ("Because the analysis necessarily focuses on the activity of a class of workers, a 'plaintiff['s] personal exploits are relevant only to the extent they indicate the activities performed by the overall class.'" (quoting Rogers v. Lyft, Inc., 452 F. Supp. 3d 904, 915 (N.D. Cal. 2020))); but see supra note 2.

Agreement ¶¶ 2, 4.)  However, in addition to transporting goods, the agreements in Bissonette were much broader than the Agreement before the Court:  the Bissonette agreements required the plaintiffs to, among other things, identify new clients, develop client relationships, order products based on customer needs, stock and replenish products, and "other activit[ies] necessary to promote sales, customer service, and otherwise operate their businesses."  460 F. Supp. 3d at 200.  The Agreement here does not contain any comparable obligations.  As such, the Court cannot conclude that Plaintiff is "more akin to sales workers or managers who are generally responsible for all aspects" of a furniture delivery distribution business than a transportation worker.  Id.

Crediting Defendants' representations that Plaintiff's responsibilities are "broader" than simply delivering goods, and that Defendants may request "competent, trustworthy, professional services [from Plaintiff] using the highest standard of care, using [Plaintiff's] own appropriate independent skill and judgment" (Agreement ¶ 2), "[a]ctual transportation is not limited to the precise moment either goods or the people accompanying them cross state lines."  Saxon v. Sw. Airlines Co., No. 19-3226, --- F.3d ---, 2021 WL 1201367, at *4 (7th Cir. Mar. 31, 2021) ("Loading and unloading cargo onto a vehicle so that it may be moved interstate, too, is actual transportation, and those who performed that work were recognized in 1925 to be engaged in commerce.").  Even so,

12

the parties' submissions make clear that transportation and delivery "activities were a fundamental, not merely incidental, aspect of [Plaintiff's] job." Smith, 482 F. Supp. 3d at 47; (see Agreement ¶ 2 ("[Y]ou agree that while performing deliveries for TCA you will not carry merchandise for any other business until you have finished the delivery manifest given to you by TCA." (emphasis added)); Eletto Decl. ¶ 5 (stating Plaintiff's main responsibilities include transporting the furniture from the warehouse to a customer's home or place of business, installing the furniture, and removing old furniture and garbage" (emphasis added)); Eletto Decl. ¶ 6 ("With certain levels of delivery service, . . . [someone like Plaintiff] also assist[s] the customer with any additional tasks needed . . . ." (emphasis added)); Eletto Decl. ¶ 9 (noting that TCA "looks primarily for contractors with furniture delivery experience") (emphasis added).)   Therefore, Plaintiff "falls within the residuary exemption and, accordingly, the FAA does not govern this motion." Smith, 482 F. Supp. 3d at 47.

> 2.   State Law Provides an Alternate Basis to Compel
>      Arbitration

The parties disagree whether the Agreement's arbitration clause can be enforced under state law where, as here, Plaintiff is exempt from the FAA.   Defendants argue that if the FAA does not apply, New York law applies and mandates arbitration.   (Defs. Br.

at 9-12.)  Plaintiff agrees that New York law applies but argues
that (1) the Agreement precludes mandatory arbitration where the
FAA "prohibits it" (Pl. Opp. at 7-8); and (2) New York public
policy precludes mandatory arbitration of Plaintiff's NYLL claims
(id. at 8-17).  The Court agrees with Defendants and finds that
New York law provides an alternate basis to compel arbitration.

        The Court rejects the argument that Plaintiff cannot be
compelled to arbitration under New York law because the Agreement
"does not apply to any claim that may not be arbitrated as provided
by an Act of Congress," and here, the FAA (an Act of Congress)
exempts mandatory arbitration.  (Pl. Opp. at 7-8.)  Rather, the
Court agrees with the well-settled principle that although
"Plaintiff is exempt from the FAA, the application of the exemption
does not preclude enforcement of the arbitration provision under
New York state law."  Espinosa v. SNAP Logistics Corp., No. 17-
CV-6383, 2018 WL 9563311, at *5 (S.D.N.Y. Apr. 3, 2018); Islam,
2021 WL 871417, at *13 ("As a general matter, the inapplicability
of the FAA does not render an arbitration clause void when it is
otherwise enforceable under state law.") (collecting cases);
Michel v. Parts Auth., Inc., No. 15-CV-5730, 2016 WL 5372797, at
*3 (E.D.N.Y. Sept. 26, 2016) ("Because 'New York arbitration law
does not exempt transportation workers from arbitration,' . . .
[Plaintiff] is compelled to arbitrate his claim regardless of the
applicability of the FAA." (quoting Diaz v. Michigan Logistics,

<u>Inc.</u>, No. 15-CV-1415, 2016 WL 866330, at *4 (E.D.N.Y. Mar. 1, 2016))); <u>Smith</u>, 482 F. Supp. 3d at 47 ("That plaintiff is exempt from the FAA does not mean, as plaintiff argues, that state arbitration law is preempted and that the arbitration agreement is therefore unenforceable.   Multiple courts have rejected this proposition." (collecting cases)); <u>Valdes v. Swift Transp. Co.</u>, 292 F. Supp. 2d 524, 529 (S.D.N.Y. 2003) ("Section 1 does not . . . address the enforceability of employment contracts exempt from the FAA.   It simply excludes these contracts from FAA coverage entirely.").   As other courts have determined, it is "untenable" to conclude that "arbitration provisions in employment contracts exempt from the FAA, <u>i.e.</u>, transportation workers' employment contracts, are entirely unenforceable even where state law provides otherwise."   See <u>Valdes</u>, 292 F. Supp. 2d at 529.

Moreover, Plaintiff is correct that the Agreement excludes "any <u>claim</u> that may not be arbitrated as provided by an Act of Congress."   (Agreement ¶ 4 ("Excluded Claims" provision) (emphasis added); <u>see</u> Pl. Opp. at 8 ("[T]here is express language in the contract here that precludes Plaintiff from being compelled to arbitration where Congress has excluded him . . . .").)   But Plaintiff does not argue, and the Court does not conclude, that the FAA, or any other "Act of Congress," precludes arbitration of Plaintiff's NYLL <u>claims</u>.   Instead, Plaintiff argues that New York public policy precludes mandatory arbitration of Plaintiff's NYLL

15

claims.   (Pl. Opp. at 8-17 (citing Wertheim & Co. v. Halpert, 48
N.Y.2d 681, 683 (1979) and Aimcee Wholesale Corp. v. Tomar Prods.,
Inc., 21 N.Y.2d 621, 625 (1968)).)   Yet, "[d]istrict courts in
this circuit have rejected this argument and required arbitration
of claims under the New York Labor Law." Michel, 2016 WL 5372797,
at *4 (collecting cases).   Moreover, "[e]ven if such a public
policy exception survived the developments in arbitration law
since Aimcee was decided, none of the cases to which Plaintiffs
cite for support involved claims under the FLSA or NYLL."
Zambrano, 2016 WL 5339552, at *9; id. at *9 n.18 (noting, among
other things, Aimcee was decided in context of an antitrust action
and Wertheim was decided in context of a discrimination action).
Indeed, courts have recognized that "NYLL causes of action are
arbitrable."   Toure v. Thunder Lube Inc., No. 17-CV-0657, 2019 WL
4805197, at *3 (E.D.N.Y. Sept. 30, 2019) (citing Rodriguez Depena
v. Parts Auth. Inc., 877 F.3d 122, 124 (2d Cir. 2017)).

      Plaintiff now cites Bissonette for the proposition that
the Court cannot "compel the case to arbitration under [state] law
if the FAA exemption applied, because the terms of the agreement
preclude[] the court from applying [state] law in a manner that
[is] inconsistent with the FAA."   (Pl. Opp. at 7-8 (citing
Bissonette, 460 F. Supp. 3d at 197 n.7).)   Reliance on Bissonette
for this proposition is misplaced.   In Bissonette, the defendants
asked the court to forgo a FAA exemption analysis because

"arbitration is required under Connecticut law as an alternative to the FAA." Bissonette, 460 F. Supp. 3d at 197 n.7. The Court declined the request because the agreements at issue contained language that: "covered claims 'shall be submitted to and determined exclusively by binding arbitration under the [FAA]'"; and "the [a]greement shall be governed by the FAA and Connecticut law to the extent Connecticut law is not inconsistent with the FAA." Id. Thus, the Bissonette agreements' express terms required the court to determine its authority to compel arbitration under the FAA because it would be "'inconsistent with the FAA' for the Court to exercise its authority under Connecticut law to compel arbitration if [it] lacked authority to do the same under the FAA." Id. There are no similar concerns here because the Agreement is not governed by the FAA and does not contain any citation or reference to the FAA. (See Agreement; Dispute Resolution Procedure.)

Rather, because the FAA is not implicated, and because the Agreement contains a New York choice of law provision, the Court considers whether New York law mandates arbitration.[5] Smith,

---

[5] While the Dispute Resolution Procedure does not contain a choice of law provision, the Agreement states that: "This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws principles," and it incorporates by referenced the Dispute Resolution Procedure into the Agreement. (Compare Dispute Resolution Procedure with Agreement ¶ 22.) Neither party disputes the application of New York law.

482 F. Supp. 3d at 48 ("Where the FAA is not applicable, it follows that state arbitration law should be applied, . . .").  In light of the foregoing, the Court concludes that it does because "New York arbitration law 'does not exempt transportation workers from arbitration[.]'"  Burgos v. Ne. Logistics, Inc., No. 15-CV-6840, 2017 WL 10187756, at *4 (E.D.N.Y. Mar. 30, 2017) (quoting Diaz, 167 F. Supp. 3d at 381).

    B. The Class Action Waiver is Enforceable

        Plaintiff also argues that the Agreement is invalid and unenforceable because New York law precludes class arbitration waivers.  (Pl. Opp. at 17-25.)  The Court rejects this argument because "New York courts [] have upheld class action waivers in arbitration agreements against challenges that they are unconscionable."  Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 251 n.28 (S.D.N.Y. 2020) (collecting cases applying New York law).  To be sure, an arbitration provision is "enforceable even though it waives plaintiff's right to bring a class action" because "[u]nder New York law, 'a contractual proscription against class actions . . . is neither unconscionable nor violative of public policy.'"[6] Tsadilas v. Providian Nat'l Bank, 13 A.D.3d 190, 191 (N.Y. App. Div. 1st Dep't 2004) (quoting Ranieri v. Bell Atl.

_____

[6] For the same reason, the Court declines Plaintiff's invitation to adopt the reasoning of out-of-state cases holding otherwise. (See Pl. Opp. at 22-24.)

18

Mobile, 304 A.D.2d 353, 354 (N.Y. App. Div. 1st Dep't 2003)).  The
Court thus finds Plaintiff's class action waiver enforceable under
New York law.

Plaintiff argues that Gold v. New York Life Ins. Co.
("Gold I"), 153 A.D.3d 216 (N.Y. App. Div. 1st Dep't 2017),
provides persuasive guidance for the Court to conclude that the
class action waiver is unenforceable.  (Pl. Opp. at 20-22.)  The
Court disagrees.  In Gold I, New York's First Appellate Department
held that arbitration agreements "which prohibit class,
collective, or representative claims, violate the National Labor
Relations Act (NLRA) and thus, that those provisions are
unenforceable."  153 A.D.3d at 221.  New York's highest court
reversed that decision, stating "[t]he parties now agree that the
arbitration clauses in [the] agreements are enforceable . . . ,
and ask that we reverse," and citing Epic Systems Corporation v.
Lewis, 138 S. Ct. 1612 (2018).  Gold v. New York Life Ins. Co.
("Gold II"), 32 N.Y.3d 1009 (N.Y. 2018).  In Epic, the United
States Supreme Court held "that the FAA contains an explicit
congressional directive that arbitration agreements providing for
individualized proceedings must be enforced, and neither the FAA's
saving clause nor the NLRA suggests otherwise."  Lusk v. Serve U
Brands, Inc., No. 17-CV-6451, 2019 WL 4415122, at *3 (W.D.N.Y.
Sept. 16, 2019) (citing Epic, 138 S. Ct. at 1621-32).  As a
preliminary matter, Plaintiff is exempt from FAA coverage and so

19

the Court looks to New York law, which has upheld class action waivers in arbitration agreements. <u>See</u> discussion <u>supra</u>. Second, and assuming the FAA applies, the Supreme Court has stated: "In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms -- <u>including terms providing for individualized proceedings</u>." <u>Epic</u>, 138 S. Ct. at 1619 (emphasis added). Any argument to the contrary necessarily fails.[7]

Finally, Plaintiff argues that the National Labor Relation Board's ("NLRB") conclusion that "waiver of collective claims violates the NLRA, and is void and invalid" is dispositive. (<u>See</u> Pl. Opp. at 21 (citing <u>Gold I</u>, 153 A.D.3d at 225).) This argument warrants little discussion because "the Second Circuit has rejected the NRLB's reasoning with respect to class-action waivers and has concluded that it owes no deference to those NLRB opinions." <u>Burgos</u>, 2017 WL 10187756, at *5 (collecting cases). Therefore, the Court rejects the argument that the class action waiver renders the Agreement's arbitration clause unenforceable.

---

[7] Plaintiff inconsistently argues that <u>Epic</u> does not control because, among other reasons, "the NLRA does not apply to this case," notwithstanding his argument that "NLRA precedent is generally applicable to" the New York State Labor Relations Act. (<u>Compare</u> Pl. Opp. at 18-20 <u>with</u> <u>id.</u> at 17.) Similarly, Plaintiff argues that New York's Court of Appeals did not "undermine <u>Gold I</u>'s persuasiveness," notwithstanding the New York Court of Appeal's reversal of <u>Gold</u>, with an explicit citation to <u>Epic</u>. (<u>Compare</u> Pl. Opp. at 20-22 <u>with</u> <u>Gold II</u>.) For the same reasons stated above, the Court rejects these arguments.

C. <u>Under New York Law, the Parties Agreed to Arbitrate the Claims at Issue</u>

Under New York law (<u>see</u> supra note 5), the Court considers "(1) whether the parties made a valid agreement to arbitrate; (2) if so, whether the agreement has been complied with; and (3) whether the claim sought to be arbitrated would be time-barred if it were asserted in state court." <u>Zambrano v. Strategic Delivery Sols., LLC</u>, No. 15-CV-8410, 2016 WL 5339552, at *9 (S.D.N.Y. Sept. 22, 2016).

Plaintiff does not dispute that he signed both the Agreement and the Dispute Resolution Procedure. Other than arguing that the class action waiver renders the Agreement unenforceable, discussed <u>supra</u>, Plaintiff does not argue that fraud, duress, or unconscionability render the Agreement or Dispute Resolution Procedure unenforceable. Nor does he meaningfully dispute that the NYLL claims at issue fall within the scope of the arbitration clause, which covers, among other things, any claims against TCA and claims arising out of or relating to Plaintiff's "performance of services for [TCA] and/or under the [] Agreement and/or [Plaintiff's] relationship with [TCA]." (<u>See</u> Dispute Resolution Procedure ¶ 2.) It follows that "Plaintiff violated the agreement by bringing this action in federal court." <u>Espinosa</u>, 2018 WL 9563311, at *5. Moreover, "[n]either party contends Plaintiff's claims are time-barred." <u>Id.</u> Thus, the parties entered into a

valid and enforceable arbitration agreement under New York law and Defendants' motion to compel arbitration on an individual basis is GRANTED.

    D. The Court Will Stay This Action

        Where, as here, the Court compels "arbitration pursuant to a written agreement, both the FAA and New York law mandate that the action be stayed pending arbitration." Espinosa, 2018 WL 9563311, at *6 (citing 9 U.S.C. § 3 and CPLR § 7503(a)). Although Defendants seek dismissal, the Court concludes that a "stay is more appropriate than dismissal in this case because 'a stay would allow the Court, at a later stage, to address any claim by Plaintiff that he was not able to vindicate all his statutory rights due to costs or fees imposed on him in arbitration.'" Id. (cleaned up) (quoting Zambrano, 2016 WL 5339552, at *10). Accordingly, the action is STAYED pending arbitration.


                [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

CONCLUSION

For the reasons stated, Defendants' motion to compel arbitration (ECF No. 11) is GRANTED and this action is STAYED pending arbitration.  On or before October 8, 2021, the parties shall file a joint Status Report advising the Court as to the status of any arbitration.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March __31__, 2021
          Central Islip, New York